## Warder *against* Tainter.

A judgment in *scire facias* upon a mortgage, returned "*nihil* and that there are no terre tenants," followed by an *alias scire facias* and the same return, is not void, although the defendant was dead when the first writ issued: and a sale of the land by the sheriff upon a *levari facias* on such judgment, confers a good title upon the purchaser, who was the plaintiff in the judgment.

ERROR to the common pleas of *Luzerne* county.

This was an ejectment by Charles Tainter and others against the executors of John Warder for four hundred and ninety acres of land. Thomas Overton being the owner of a tract of land containing four hundred and ninety acres and a half, and allowances, &c. in the county of Luzerne, on the 6th day of January 1812 conveyed the same to one Charles Tainter, the father of the defendants in error. The consideration recited in the deed is 1000 dollars, no part of which was paid; but a mortgage was given of the premises by Tainter to Overton for the whole consideration money. A payment of 60 dollars is indorsed on the mortgage, purporting to have been paid on the 12th day of February 1812. On the 17th day of October 1812, Overton assigned the mortgage to one Jeremiah Warder in consideration of 1000 dollars; and, after one *mesne* assignment, it came to John Warder, the testator of the plaintiffs in error, who, on the 23d day of June 1827, issued a *scire facias* upon this mortgage, from the court of common pleas of Luzerne county, directed to Charles Tainter and terre tenants; this was returned *nihil*, and that there were no terre tenants in possession. Another *scire facias* issued August 31st, 1827, directed in the same manner, which was also returned *nihil*, and that there were no terre tenants; and on the 27th of November 1827, judgment was entered for plaintiff, a *scire facias* issued to the ensuing January term, and the premises were sold to John Warder, the plaintiff in the *scire facias*, for 25 dollars, and a deed therefor was duly made to him by the sheriff. John Warder died on the 7th of May 1828, having devised the premises to the plaintiffs in error.

In answer to this case of the Warders, the defendants in error, plaintiffs below, produced evidence of the following tendency, viz. that Charles Tainter, the mortgagor, removed from Wilkesbarre to

[Warder v. Tainter.]

the state of New York some time previous to the year 1820, where he died on the 26th day of March 1827.

As the time of Tainter's death was previous to the issuing of the first *scire facias* on the mortgage, it was contended by the heirs of Tainter that the whole of the proceedings on the mortgage were void, and that therefore the relations of the parties were not disturbed thereby ; and that by paying the mortgage money, principal, interests, taxes and costs into court (which they did), they were entitled to recover in this action of ejectment ; and it was so ruled by the court below in the admission of testimony and the charge to the jury.

The following errors were assigned :

1. The court below erred in admitting evidence of the date of the death of Charles Tainter, the defendant, in certain proceedings of *scire facias* upon a mortgage, under which proceedings the plaintiffs in error derive title to the land in question.

2. If such evidence was admissible for any other purpose, it was not admissible to impeach the record of the said proceedings in *scire facias ;* and if admitted by the court for any legitimate purpose, the court erred in not directing the jury to disregard it so far as its tendency was to impeach that record, or any portion thereof.

3. The court erred in charging the jury, "that if they should be of opinion that Charles Tainter, the mortgagor, died, &c. on the 26th of March 1827, or at any time prior to the commencement of the proceedings by Warder to recover the mortgage money, and that the plaintiffs are the children and heirs of Charles Tainter; then, the *scire faciases*, return, judgment, and all subsequent proceedings in the case are void, so far as the plaintiffs are concerned, and can in no way affect their interest in the land in question. The legal estate was vested in Charles Tainter ; at his death it descended immediately to the plaintiffs as his heirs. The *scire faciases* then upon the mortgage should (under an act of assembly prescribing the mode of proceeding to recover upon a mortgage) have issued against the plaintiffs as heirs, or against the executors or administrators of Charles Tainter. It did not so issue. It issued against no one in being, and was, therefore, a nullity. The plaintiffs were not parties, nor were they privy to the proceedings, nor was there any mode by which they could have become parties except by consent."

4. The court erred in submitting to the jury the question whether Charles Tainter was dead prior to the commencement of the proceedings on the mortgage; as the sheriff's return to the writs of *scire facias* was conclusive and unimpeachable in this action of ejectment.

5. The court erred in charging the jury that the judicial proceedings on the mortgage were a nullity, and void.

6. The court erred in permitting any inquiry in this suit into the validity of the judgment in *scire facias* on the mortgage ; as the defendants claimed under a purchase at sheriff's sale, and were protected by the act of assembly in such case made and provided.

7. The court erred in charging the jury that the possession of the

[Warder v. Tainter.]

defendants was tortious, as the defendants claimed under a purchase at sheriff's sale; and their title and possession were legitimate, although the judgment were erroneous.

8. The court erred in charging the jury that the defendants' possession was tortious, they being the holders of an overdue and unsatisfied mortgage, which alone would have justified their possession.

9. The court erred in not instructing the jury that the only mode of inquiring into the fact of Charles Tainter's death, prior to the proceedings in *scire facias*, was by a writ of error, and that it was not a subject for their consideration.

10. The court erred in charging the jury that the *scire facias* upon the mortgage should have issued against the plaintiffs below, as the heirs of Charles Tainter, or against the executors or administrators of Charles Tainter.

11. The court erred in charging the jury that the plaintiffs below were not privy to the proceedings of *scire facias* upon the mortgage.

12. The court erred in charging the jury that the plaintiffs below were not parties to the proceedings in *scire facias* upon the mortgage.

13. The court erred in charging the jury that there was not any mode by which the plaintiffs below might have become parties to the *scire facias* upon the mortgage, except by consent.

14. The court erred in charging the jury that a tender of the mortgage money was not necessary previously to the commencement of the proceedings in ejectment.

Lastly. In the record and proceedings of this cause, and also in giving judgment, there is manifest error in this, to wit, that the declaration or statement, and matters therein contained, are not sufficient in law for the said plaintiffs below, their aforesaid action thereof against the said defendants below to maintain. There is also error in this, to wit, that by the record aforesaid it appears that the judgment aforesaid, in form aforesaid given, was given for the said plaintiffs below, whereas by the law of the land it should have been given for the said defendants below.

*F. W. Hubbell*, for plaintiffs in error, contended, that the sheriff's return was conclusive that the defendant was alive; and cited 19 *Vin. Ab.*, tit. *Return*, lib. 2, pl. 12; *Bridg. Judgments* 469; 7 *Com. Dig.* 288, (*Day's ed.*) tit. *Return*, G.; Blythe v. Richards, 10 *Serg. & Rawle* 262. The death of a defendant in a *scire facias* is an error of fact to be taken advantage of only in an appellate court. 1 *Cov. & Hug. Dig.* 591; 3 *Com. Dig.* 569, tit. *Error*, D.; Nace v. Hollenback, 1 *Serg. & Rawle* 504; Colley v. Latimer, 5 *Serg. & Rawle* 211; Martin v. Rex, 6 *Serg. & Rawle* 296; Allison v. Rankin, 7 *Serg. & Rawle* 269; Blythe v. Richards, 10 *Serg. & Rawle* 261; Lessee of Heister v. Fortner, 2 *Binn.* 40; Anderson v. Neff, 11 *Serg. & Rawle* 208; Neff v. Barr, 14 *Serg. & Rawle* 166. Except for excess of jurisdiction the judgment of a court is never void; if it be erroneous, the remedy is by writ of error. Ulrich v. Voneida, 1 *Penns. Rep.* 251; Kent v. Campbell, 3

[Warder v. Tainter.]

*Penns. Rep.* 72; *Cro. Eliz.* 199; 1 *Lev.* 101, *pl.* 125; 3 *Peters's Cond. Rep.* 1, 8 *Cranch* 9; Allyn *v.* Dundas, 3 *Term Rep.* 125; 4 *Johns. Cha.* 228. The purchaser at a sheriff's sale is protected by the act of 1705, whether he be a stranger to the proceeding or the plaintiff in the writ. Arnold *v.* Gaw, 1 *Rawle* 223. Strictly, the heirs at law of the mortgagor were the terre tenants, and a return of two *nihils,* as to them, is sufficient to warrant a judgment. Young *v.* Taylor et al., 2 *Binn.* 224; Nace *v.* Hollenback, 1 *Serg. & Rawle* 540; Clippinger *v.* Miller, 1 *Penns. Rep.* 71; 2 *Saund. Rep.* 7, note 4; 2 *Chitt. Pl.* 245; Lenox *v.* M'Call, 9 *Serg. & Rawle* 302. The tender should have been made before suit brought, if it could have any efficacy at all. Johnson *v.* Chapman, 3 *Penns. Rep.* 20. We were entitled to take possession under the mortgage; and the action was in the nature of a bill to redeem; the equitable title must be complete. Snyder *v.* Wolfley, 8 *Serg. & Rawle* 332.

*Conyngham,* for defendant in error. The judgment is absolutely void for want of jurisdiction. 1 *Saund. Pl. Ev.* 48; *Coxe's Dig.* 431, *pl.* 217, 218; *Ibid.* 410. *pl.* 44, 51; Elliott *v.* Peirsol, 1 *Peters's S. C. Rep.* 340; Thompson *v.* Tolmie, 2 *Peters's S. C. Rep.* 163; 9 *Wheat.* 541. Although the court may have had jurisdiction of the cause of action, it had not of the party. Bissel *v.* Briggs, 9 *Mass.* 462; Commonwealth *v.* Fourteen Hogs, 10 *Serg. & Rawle* 397; 1 *Day's Rep.* 40; 3 *Cranch* 331; 1 *Peters's Cond. Rep.* 552; Pawline et al. *v.* Wilson et al., 13 *Johns.* 206; 7 *Cranch* 481; Borden *v.* Fitch, 15 *Johns.* 121. The act of 1705, sect. 6, authorizes a proceeding against the mortgagor, his heirs, executors or administrators; but in this case the executors, administrators or heirs are not named. This is not a proceeding *in rem,* for the act requires the service of the writ on the person. 2 *Arch. Prac.* 88; 1 *Peters's S. C. Rep.* 122; 3 *Am. Dig.* 361, *pl.* 31; 4 *Peters's S. C. Rep.* 470; Bigelow *v.* Stearns, 19 *Johns.* 40; 3 *Cond. Rep.* 312, 9 *Cranch* 126, 143; M'Pherson *v.* Cunliff, 11 *Serg. & Rawle* 430. After the death of the ancestor, the property had changed by a descent to the heirs, between whom and this judgment there is no privity. 5 *Jacob's Law Dic.* 285; *Co. Litt.* 385, *b*; Wood *v.* Stephen, 1 *Serg. & Rawle* 175; Estep *v.* Hutchman, 14 *Serg. & Rawle* 438; 11 *Serg. & Rawle* 427. A judgment in error, *coram vobis,* is not *reversetur* but *revocetur,* and the suit goes on. Hill *v.* Downer, 11 *Johns.* 460. Could it do so here? A purchaser under a void judgment is not protected. Burd *v.* Dansdale, 2 *Binn.* 80. On the subject of tender, he cited, Harris *v.* Bell, 10 *Serg. & Rawle* 42.

The opinion of the Court was delivered by

KENNEDY, J.—All the errors assigned present, at most, but two questions. First, was it competent for the plaintiffs to impeach and annul the judgment in the *scire facias* on the mortgage, and the sale of the land under it, by showing that the mortgagor was dead before

IV.—2 K

[Warder v. Tainter.]

the impetration of the first writ of *scire facias?* The second is, was the court right in charging the jury that to entitle the plaintiffs below to recover the possession of the land, it was not necessary for them to tender the mortgage debt with the interest due thereon before the commencement of the action?

Now, as to the first, it is not denied, that the judgment and sale would have been good, if the mortgagor, who was the defendant in the writs of *scire facias,* had been living at the time of suing them out, and had continued to live until the sale was effected. Indeed, had this been the case, the validity of the proceeding and the sale could not have been contested; for the practice of selling mortgaged lands under judgments obtained on the return of two *nihils* made by the sheriff, as in the present case, is as old, I take it, as the act itself, which authorizes and directs the recovery of the mortgaged debts, in such cases, by *scire facias,* and sale of the mortgaged lands under a *levari facias* awarded on the *scire facias.* This practice was adopted because it had obtained previously in other cases, where the writ of *scire facias* was sued out for the purpose of having execution awarded of judgments, recognizances and the like. Two *nihils* are considered equivalent to a garnishment, a service of the writ of *scire facias,* or a return of *scire feci* by the sheriff. Barcock *v.* Thompson, *Sty.* 281, 288 ; Bromley *v.* Littleton, *Yelv.* 113. And it has therefore ever been the practice in case of there being no appearance by the defendant, on the return of the *second nihil* at most, to render judgment as in case of a *scire feci* returned. Barret *v.* Cleydon, *Dyer* 168, *a;* Rex *v.* Eston, *Ibid.* 198, *a;* Chevin and Paramour's case, *Ibid.* 201, *a;* *Yelv.* 112, 113 ; *Tidd's Practice* 1039, 1040 ; Compher *v.* Anawalt, 2 *Watts's Rep.* 492. Now, suppose that Charles Tainter, after giving the mortgage, had moved with his family to Asia, and had become resident at Canton, and instead of being dead, had been living there at the time of suing out the writ of *scire facias,* and the sheriff had made to it the return of *scire feci;* and the defendant not appearing to answer to the writ, the court had rendered a judgment, awarding execution for the mortgage debt against the land, and it had been sold by the sheriff under an execution issued for that purpose : would not the return of the sheriff to the writ of *scire facias* be conclusive, and could the mortgagor or his heirs afterwards, in an action of ejectment brought against the purchaser at the sheriff's sale, be permitted to show that the return of the sheriff to the *scire facias* was false, by proving that the mortgagor was in Canton at the time, as the heirs of the mortgagor were permitted to show his death in this case, not merely for the purpose of reversing the judgment, but likewise for avoiding the sale of the land under it? I think it is very certain that he could not. The only remedy in case of an injury being sustained by such false return, would be, as I apprehend, by an action against the sheriff. *Fitz. N. B.,* tit. *Writ of Disceit,* 222, *D;* 225, *R;* 226, *H;* Corbet *v.* Marsh, *Moo.* 349 ; Barr *v.* Satchwell, 2 *Stran.* 813. The judg-

[Warder v. Tainter.]

ment could not be reversed for such cause even upon writ of error; because the sheriff's return being part of the record, Mildmay *v.* Smith, 2 *Saund.* 334, *note* 2, no error could be assigned which would contradict it.   And accordingly, it was adjudged in Corbet *v.* Marsh, *Moo.* 349, that the tenant against whom a recovery had been had in dower, could not assign for error that he was not summoned for fifteen days, nor proclaimed at the church door, according to the statute of 31 *Eliz.,* because the sheriff had returned him summoned and proclaimed; and that his remedy was against the sheriff.   So in Plommer *v.* Webb, *note* 2, *Lord Raym.* 1415, in debt on bond in the common pleas, where *non est factum* was pleaded, and verdict and judgment given for the plaintiff, it was held in the king's bench, on writ of error, that the death of Webb, before the day of *Nisi Prius,* could not be assigned for error, because the record mentioned that he appeared that day.   And in *Jenk.* 99, *ca.* 92, it was held, that a judgment given for husband and wife upon a verdict found in their favour, at *Nisi Prius,* after the death of the wife, could not be reversed for such cause upon writ of error, although upon an issue joined for having the fact ascertained, it was found by the jury that the wife died before the *Nisi Prius;* because the *postea* of the *Nisi Prius* recited that the husband and *wife* appeared at the *Nisi Prius.* And again, in Helbert *v.* Held, 2 *Lord Raym.* 1414, it was decided, that nothing can be assigned for error which is contrary to the record: and this is fully supported both by prior and subsequent cases on the subject.   Hudson *v.* Banks, *Cro. Jac.* 28; Bowsse *v.* Cannington, *Ibid.* 244; Cole *v.* Green, 1 *Lev.* 310; Molins *v.* Werby, *Ibid.* 76; Arundell *v.* Arundell, *Yelv.* 33, 34; Lampton *v.* Collingwood, 1 *Salk.* 262; Bradburn *v.* Taylor, 1 *Wils.* 85; 1 *Roll. Abr.* 758, *pl.* 8; 5 *Com. Dig., tit.* Pleader, 3, *b,* 16, 4th ed.; 2 *Bac. Abr.* 488, *et seq., tit.* Error, *Wils.* ed.   Now, suppose that the sheriff, in the case before us, had made a return of *scire feci* to the writ of *scire facias,* and the defendant not appearing to show cause, a judgment awarding execution against the land had been given, and by virtue of a *levari facias,* issued in pursuance thereof, the land had been sold; the sale, as it appears to me, would not only have been good, but the judgment would have been irreversible upon writ of error, because it would have been against the record to have assigned the death of the defendant for error, who could not have been returned served with the writ, unless he had been alive.   This then being so, I apprehend, that according to the authorities cited, and upon principles of analogy, and the reason of the law, the proceedings in the *scire facias* upon the mortgage in the present case, must be considered equally good and available.   But with a view to show this, let me first observe, that the law is not indifferent as to what a sheriff shall return to a writ directed to him and put into his hands for the purpose of being served.   It does not consider any thing, though true, that he may think proper to return to it, good; but it has established and declared what shall and what shall not be a good return to each

particular writ. Chief Justice Bridgman, in his *Notes of Opinions* 469, says, "in trespass upon the *capias*, the sheriff cannot return a *mortuus*, but *non est inventus;* and so upon an exigent a *mortuus* is not good; for saith Prisot, the chief justice, it is better to put the executors to a writ of error, than to suffer the sheriff to return that which may be false, to which no answer can be given," and cites 32 *Hen.* 6, 28. But it seems that *mortuus est* is a good return to a *scire facias*, according to *Bro.*, tit. *Retorne de Briefe, pl.* 125, for which he cites, 32 *Hen.* 6, 27. See also, 19 *Vin. Abr.*, *tit. Return, lib.* 2, *pl.* 12, to the same effect. Now, it cannot be questioned that it is the duty of the sheriff, when a writ of *scire facias* upon a mortgage, directed to him, is placed in his hands for service, to make that return, and that alone, which is the true and legitimate return to such writ. Hence, in the case under consideration, it was the duty of the sheriff, when the *scire facias* was put into his hands to be served, to inquire for Charles Tainter, the defendant named therein, and to ascertain first whether he was alive or dead, and if dead, to return *mortuus est;* but if alive and within his bailiwick, then to serve it and to make return thereof accordingly ; if not within his bailiwick, then to return *"nihil,"* as he did. Seeing that this was his duty, we are bound to presume that he did it faithfully. Indeed every one is presumed to have done all that his duty required of him, and more especially so, where he has come under the obligation of an oath to that effect, as the sheriff has. The return of *nihil*, then, would seem to imply that the defendant was alive at the time of the writ being returned by the sheriff, otherwise he ought to have returned *mortuus est*: and having shown also that a return of two *nihils* is equivalent to a *scire feci*, it follows, as a necessary consequence, that all that is implied by the return of *scire feci* is equally implied by the return of two *nihils;* and that the defendant is still alive being implied by either return, no averment can be received to contradict it after it has become part of the record. The effect of the judgment rendered in both cases may not be the same in all respects; because where the defendant has been actually summoned, and suffers a judgment to be entered by default against him, he will not be entitled to relief upon an *audita querela* for the same cause that he would in case of a judgment given against him upon a return of two *nihils. Fitz. N. B.*, tit. *Audita Querela*, 237, *I.* The reason for this distinction is, that in the case of *scire feci* the defendant has actual notice, whereas in the case of two *nihils*, he has only implied or constructive notice; but that he is in full life is alike implied by either return, and the effect must therefore be the same. Hence the judgment cannot be reversed for or on account of the defendant's death, before the commencement of the suit, in either case.

The case of Lampton *v.* Collingwood, 1 *Salk.* 262, is strikingly illustrative of all this. There a *scire facias* had been sued out upon a judgment against A and B, in which it was suggested that A died and B survived, and that R was his administrator. Upon two *nihils* returned, judgment was given by default against R, who

[Warder v. Tainter.]

brought a writ of error, and assigned for error that A survived, upon which issue was joined, and found for the plaintiff; but the court, notwithstanding, quashed the writ of error, holding this matter not assignable for error, because it was contrary to the surmise of the writ of *scire facias*. And the court say that if *scire feci* had been returned, R might have pleaded it, but since it was ,not, he must bring his *audita querela*. So it would appear that the record cannot be contradicted after a judgment rendered upon two *nihils* upon a writ of error, more than after a judgment given upon a *scire feci :* that in the former of these cases the party aggrieved may, in some instances, obtain relief after judgment given by an *audita querela*, but in no case by writ of error, and much less, certainly, in a collateral action.

But it has been objected that the judgment rendered in the *scire facias* upon the mortgage, awarding execution, was not voidable merely, but absolutely *void* for want of jurisdiction on the part of the court; because Charles Tainter, the defendant named therein, was dead anterior to suing out the writ, and therefore it was impossible that the court could have jurisdiction of his person. This objection I have already met, as I conceive, by showing that from the return made by the sheriff to the writs of *scire facias*, and the judgment rendered thereon by the court, the plaintiffs below are concluded from making it even upon a writ of error, and much more in a collateral suit. But is it necessary that the court should have jurisdiction of the person in a proceeding by *scire facias* upon a mortgage? If it be, then, I apprehend that many judgments, and sales of mortgaged lands made under them, that have hitherto been considered valid, are void. For it is obvious that where the mortgagor, in case of such proceeding, was a non-resident of the state, or even of the county in which the land was situate, and there have been many such cases, that the court of common pleas of the county in which the proceeding was commenced and carried on, could have no jurisdiction of his person, more than if he had been dead. But it never entered into the mind of any one, I think, that a sale made of the mortgaged land in such case was void on account of its being made under an execution awarded by the court upon two *nihils* returned by the sheriff to the writs of *scire facias*, where the defendant was a non-resident of the county or the state at the time. The court of common pleas in each county, in which these proceedings must be had, with a few exceptions, is of general and unlimited jurisdiction. It is restricted in no respect whatever, either as to the nature or causes of action, nor yet as to persons. And with the exception of the counties of Philadelphia, Lancaster, York and Alleghany, it is the only court or tribunal of the state, in which a civil suit for a claim exceeding 100 dollars can be brought and tried. It is true that in most cases the original writ, by which the action is commenced, must appear by the return of the sheriff to have been served on the defendant therein named, otherwise the court cannot proceed

[Warder v. Tainter.]

to give a judgment against him, however just the plaintiff's cause of action may be ; or if it were to render a judgment, it would be irregular and might be reversed on writ of error. There are, however, some exceptions to this, and the commencement of a suit by *scire facias* may be considered one. We have seen already that it is sufficient to have a return of *nihil* from the sheriff to the first, and second or alias, *scire facias*, to authorize the court to proceed therein, and give judgment against the defendant, which may affect both his person and property. But the proceeding by *scire facias* upon a mortgage, under our act of assembly, is one *in rem*, and not against the person at all, and therefore jurisdiction over his person cannot be indispensably necessary.

The only reason for not proceeding by suit against a man after he is dead, to obtain a judgment that may affect the property left by him, is the impossibility of his showing cause against the plaintiff's claim ; but if from the sheriff's return it should appear that he is in full life and has been warned, that is sufficient to justify the court in proceeding according to the usual course to determine the suit, by rendering a judgment either for or against the defendant, as the justice of the case shall seem to require. From the case of Plommer *v.* Webb, we have seen that to render the judgment of the court of common pleas regular and irreversibly valid, it is not necessary that the defendant should be actually alive at the time of trial and rendition of the judgment against him ; it is sufficient that it appear by the record that he was so, though in fact he was dead and proof of the fact is offered. And again, from the case in *Jenkins* 99, where the fact of the death was actually found by a jury. So in Hopkins *v.* Wrigglesworth, 2 *Lev.* 38 ; S. C., 1 *Vent.* 207, 3 *Keb.* 28, the court of king's bench, on a writ of error *coram vobis resident*, seemed to think that the judgment could not be reversed, though the death of one of the defendants before the judgment was given against him was in a manner confessed by the plaintiff on the record. The case was this : after rendering the judgment, it was taken to the exchequer chamber by writ of error, where the death of one of the defendants before rendition of the judgment was assigned for error, and the defendant in error, who was the plaintiff in the court where the judgment had been obtained, pleaded in *nullo est erratum*, thus confessing the fact. But the court of exchequer, conceiving that it had no authority to determine errors of fact, affirmed the judgment ; and the court of king's bench afterwards, upon a writ of error *coram vobis resident*, seemed to think that the writ of error would not lie after the affirmance in the court of exchequer. This case, then, shows that a judgment is not void because the defendant was dead before it was given against him ; and it proves still further, that under certain circumstances it is not even *voidable* or *reversible*, though the plaintiff in whose favour it was given has acknowledged on the record the fact of the defendant's death. Then as to the judgment in question being void, the authorities are abundant to show that in no case is a

judgment, rendered by a court of general jurisdiction, considered void on account of the death of the defendant having taken place before the rendition of it; that at most it is only voidable and may be reversed on writ of error, but in no other way, by any one who is entitled to have such writ. As if in a *cui in vita* the tenant dies pending the writ, and afterwards judgment is rendered against him, which is erroneous, and execution is sued out against the heir, and he brings assize, he shall not avoid the judgment in the assize brought by him by showing that his father died pending the writ, but he must bring his writ of error; for the judgment is *not void*, but voidable only. 1 *Roll. Abr.* 742, *tit. Error, A, pl.* 1, 768, *pl.* 4; 2 *Bac. Abr.* 450, *tit. Error, Wilson's ed.* So if a man recover in ejectment and afterwards his executor sue out execution against the recoveree, the recoveree cannot avoid the judgment or stay the execution by showing that the testator died between (*perenter*) the verdict and judgment, as it seems, but must sue out his writ of error; for the judgment is *only* voidable. *Ibid., pl.* 2; 3 *Dane's Abr., tit. Error,* 1, *pl.* 2. Also, if a man recover land in any real action, and afterwards sue out execution against the heir of the recoveree *per scire facias,* the heir cannot avoid it by plea that his ancestor died pending the writ. *Ibid., pl.* 3. And so inflexibly does it seem to be settled that there is no mode by which relief can be had from a judgment in such case, except by writ of error; that the death of the defendant cannot be pleaded in abatement nor alleged in arrest of judgment, after verdict. Blaby *v.* Eastwigg, *Cro. Eliz.* 202. And I am not aware of even the semblance of authority to the contrary of these and the prior cases referred to, except in the case of Randall and wife, 2 *Madd.* 308, where the court are reported to have given as a special reason for their decision, that the judgment therein pleaded was not only erroneous but *void,* on account of its having been given after the death of the defendant. The case was an action in debt upon a bond against the defendants as administrators. They pleaded a judgment recovered against their intestate, and that they had not assets *ultra.* The plaintiff replied that the intestate died *before* judgment, and that the judgment was obtained after his death and kept on foot *per fraudem.* The defendants traversed the fraud, but did not answer the death of the intestate; whereupon the plaintiff demurred, and the reporter says, "the court were of opinion that the plaintiff might *avoid* the judgment *without* a writ of error, *especially* in this case, where it is not only erroneous but *void.*" This case would also seem to have been made the foundation of a judgment given by the supreme court of errors in Connecticut, in the case of Haydock *v.* Cobb, 5 *Day's Cases* 527, where a majority of the court ruled that a stranger to the judgment or decree, though no right that he had was affected by it or prejudiced in the least, might invalidate it in a collateral suit, by showing that it was passed against a person who was dead at the time. And afterwards the supreme court of New York, in Griswold *v.* Stewart, 4 *Cowen* 457, in a *scire facias* against Stewart

[Warder v. Tainter.]

as terre tenant upon a judgment entered by default at a term which commenced after the death of the defendant, entertaining, as it would seem, the notion that the judgment so entered was absolutely void on that account, held that the terre tenant might show it by plea and thereby avoid judgment.    For Mr Justice Sutherland, in delivering the opinion of the court, speaks of the judgment as being absolutely void.    Now, although the judgment of the court in 2 *Madd.* may be correct in deciding that the plaintiff in that case could avoid the judgment as to himself, which was set up by the defendants in their plea to postpone his claim, by showing that it was obtained before the death of the intestate, yet I apprehend it cannot be so for the reason given by the reporter, to wit, "that it was not only erroneous but *void;*" for this would be contrary to the current of authorities already cited, which show that a judgment for such cause is only *voidable,* at most, and *not* void.    I am inclined also to believe that the reporter, through misapprehension, has mistated the reason which induced the court to make their decision ; for lord Holt seemed not to think the book of the best authority, when, in the Bishop of Salisbury *v.* Phillips, 1 *Lord Raym.* 537, he, upon its being cited by counsel, said, *in ira,* "that no books ought to be cited at the bar but those which were licensed by the judges."    The decision of the court, however, may be sustained upon the ground that the judgment was erroneous and *voidable merely:* but the plaintiff not being either a party or privy to it, was, therefore, unable to reverse it by writ of error ; and being prejudiced by it, was entitled to do so in effect as to himself, by pleading and showing the error whenever the judgment should come to be set up for the purpose of prejudicing or depriving him of his right.    Mr Justice Swift, in the dissenting opinion of himself and two other of the judges of the court, delivered in Haydock *v.* Cobb, has laid down what perhaps may be considered the correct rule on this subject, when he says, that "parties and privies to judgments or decrees can never impeach them collaterally. They can question them only in due course of law, by writ of error, petition for new trial, appeal or application in chancery.    Strangers to judgments or decrees can never question them directly, but are permitted, when *prejudiced* by them, to show that they were obtained by fraud or collusion.    A decree, void on the face of it, has no effect on parties or strangers."    See, also, 2 *Bac. Abr.* 456, *tit. Error, B*; 2 *Saund.* 46, *a,* note 6.    This is also in accordance with the rule as laid down in 1 *Roll. Abr., K,* pl. 1; Reynolds *v.* Dignam, *Dyer* 90, *a.* ; that a writ of error can only be brought by *him who* would have *had the thing* if the erroneous judgment had not been given : and further, in Toy's case, 5 *Co.* 40, that a man shall not reverse a judgment for error, if he cannot show that the error is to *his disadvantage.*    It appearing, then, from this, that the only reason why a party is permitted to reverse an erroneous judgment, even directly in a proceeding instituted specially for that purpose, is to prevent him from being deprived of some advantage, or what otherwise would belong to him ; it would

be most incongruous to allow it to be done collaterally in any case, unless for the like reason. Hence Cobb, in the suit against him by Haydock, had no pretence, as it appears to me, for claiming, either directly or collaterally, to have the decree in favour of Haydock against Howard reversed : for he had no right whatever to the property for which the suit was brought against him by Haydock, whether the decree was reversed or not. The right of property had been in Howard, and passed from him to Haydock by the decree, who had a right therefore to recover, not only from Cobb but from the representatives of Howard themselves, as long as the decree stood unreversed ; which could only be reversed at their instance in a proceeding commenced by them for that purpose, as they alone could be said to be injured by it. I am therefore of opinion that the dissenting judges were right.

As to the case of Griswold *v.* Stewart, I think I have shown already that the judgment in question in that case was not void, but voidable only at most, on account of its having been given after the death of the defendant; and that the learned judge who delivered the opinion of the court misapprehended its real character when he said it was "absolutely void." But still the conclusion of the court on the case may be right, provided Stewart was really a stranger to the judgment and could not have brought a writ of error to reverse it. Of this however I entertain some doubt ; because, if I apprehend the facts of the case rightly, Stewart was heir, or one of the heirs at law to Walton, against whom the judgment had been given, as well as tenant of the land, to whom as such it had descended on the death of Walton ; and if the judgment, being voidable only became a lien upon the land, I am not satisfied but that he was *privy*, and might therefore as such have sued out a writ of error, and by this means have reversed the judgment : for it is not every terre tenant that can falsify the judgment in a collateral suit, because if he claims under the defendant in the judgment, he is bound by it until it shall be reversed or revoked by a suitable proceeding commenced for that especial purpose. Proctor *v.* Johnson, 1 *Lord Raym.* 670.

Having shown, as I conceive most clearly, that a judgment rendered against a defendant after his death, who died pending the suit, is at most only voidable, I would ask, if there is any good reason, why a judgment rendered against one who died before the commencement of the action, but from the sheriff's return to the original writ appeared to be alive at the time, should be considered otherwise. I certainly perceive none. There is no defendant in being, in either case, to show cause or defend against the plaintiff's right to recover, which is the all important and great objection to the regularity of the proceeding. There being no reason then for drawing a distinction between the two cases, the conclusion must be the same in both, that the judgment is only voidable, and not void. I, however, under this latter view of the matter, do not wish to be understood as relinquishing the previous one, going to show that the judgment in the *scire*

IV.—2 L

[Warder v. Tainter.]

*facias* on the mortgage is not even voidable : but have presented the latter as being the most favourable for the defendants in error that the case will admit of, and to show that even under it, the decision of the court below cannot be sustained, in permitting them to show the death of their ancestor for the purpose of avoiding the judgment in the *scire facias* sued out on the mortgage; because the proceeding by the *scire facias* being exclusively and directly against the land, which affected the rights of the plaintiffs below as heirs or *privies* to the mortgagor, they might have brought a writ of error in order to have had the judgment given therein reversed, if any sufficient cause existed for it, and therefore had no right to claim to do it in a collateral action.

But it has been further contended, that the evidence was admissible to avoid the sale of the land, if not the judgment.    And although no case directly in point has been cited by the counsel for the defendants in error to support this branch of his argument, yet there are cases which have been decided in the higher tribunals of some of our sister states, that may seem to have some slight bearing on the question involved in it.  In Brown *v.* M'Cullough, 2 *Taylor's N. C. Rep.* 2, it was held that a sale of land made by the sheriff under a *fieri facias* issued and bearing test after the death of the defendant, who died seised, without any *scire facias* being sued out against the heirs or devisee, conveyed no title to the purchaser.   So it was held by the supreme court of the state of Ohio, in the lessee of Massey's heirs *v.* Long, 1 *and* 2 *Ohio Rep.* 412, *edit. of* 1833; and in the the lessee of M'Carty *v.* Reed, 5 *Ohio Rep.* 221, that a sale of land, of which the defendant died seised, made under an execution after his death, upon a judgment rendered in his lifetime, was void.    And again, by the supreme court of the state of New York, in the case of Stymets *v.* Brook, 10 *Wend.* 206, it was adjudged that land sold on an execution sued out after the death of the defendant, but *tested* as on the day *previous* to his death, passed no title.    And in a prior case of Woodcock *v.* Bennet, 1 *Cowen* 711, where, under an execution against two defendants, land was sold, and the execution was afterwards set aside for *irregularity*, without more appearing on the record, but it was admitted in the argument that one of the defendants in the execution had died before the *test* of it; the court of errors decided that the vendee of the sheriff under the execution could not hold the land.    The only English authorities I have met with that appear to be any way pertinent, are in *Fitz. N. B.* 267, where, in treating of an execution on a recognizance taken in chancery, it is said, if the recognizor die, and the recognizee take out an execution without a *scire facias*, by means whereof the heir or terre tenants are ousted, they shall have an assize of novel disseisin.    And this is recognized as good law by Lord Chief Justice Bridgman, in Howard *v.* Phillips, 6 *Bridg. Rep.* 473, where he says, it shows that the execution is merely *void*; and see *Ibid.* 470.    The only authorities given by Mr Justice Nelson, in support of the opinion of the court in Sty-

[Warder v. Tainter.]

mets *v.* Brook, which case seems to go further than any other on this subject, are 2 *Saund.* 6, *n.* 1, 72, *a*; *Bac. Abr., tit. Execution*, 731, *pl.* 14; 2 *Tidd.* 1029; 2 *Archb. Prac.* 88. But these authorities, as it appears to me, only go to show that *generally*, in the case of a defendant's dying after judgment against him and before execution sued out, the plaintiff cannot have it afterwards without a previous *scire facias* against the heir or personal representatives of the defendant. I presume, however, that the decision of the court in Stymets *v.* Brook may be in accordance with and sustained by the statutory law of New York on the subject; but it appears to be contrary to the English law, as well in respect to taking lands in execution there, as goods. For it is perfectly well settled that under a *fieri facias* issued after the death of the defendant, but tested before, his goods may be seized in execution and taken from his executors or administrators. Penoyer *v.* Brace, 1 *Lord Raym.* 245; S. C., 1 *Salk.* 319; Odes *v.* Woodward, 2 *Lord Raym.* 850; 3 *P. Wms* 399. And in Harwood *v.* Phillips, 6 *Bridg. Rep.* 469, it was held that there was no difference between an execution by *elegit* and by *fieri facias*, upon the death of the defendant; and that a writ of execution upon lands which bore test in the life of the defendant might be executed after his death. In regard to the decisions in North Carolina and Ohio, it is probable that the special provisions of their statutes relating thereto have had some influence in producing them, and that their laws are somewhat different from those of this state. Here a judgment against a defendant for money not only becomes a lien upon all his real estate of freehold lying within the county where it is obtained from its date; but all his debts become liens upon it throughout the state, wherever it may be, from the instant of his death, and it passes to his heirs or devisees, subject to the payment of them. How this may be in the states of North Carolina and Ohio, I do not know; and until a late act of the legislature making a change on the subject, it has not been necessary here, as it seems to me to have been in those states, upon the defendant's dying seised of lands, to sue out a *scire facias* against his heirs, devisees or the terre tenants, before taking them in execution upon a judgment obtained against him in his lifetime. A *scire facias* against the executors or administrators for the purpose of reaching the personal estate of the deceased in their hands by execution, has always been deemed sufficient, where personal estate could not be had, to authorize the taking of the real estate in execution, so that the heirs, devisees or terre tenants who have become the owners thereof receive no notice, and have never been made parties to the judgment; and the reason given in England for requiring a *scire facias* to be issued after the death of the defendant, before his lands shall be taken in execution, which is "that where any new person is either to be better or worse by the execution, there must be a *scire facias*, because he is a stranger, to make him a party to the judgment (Pennoir *v.* Brace, 1 *Salk.* 319; Regina *v.* Ford, 1 *Lord Raym.* 768.; Wortley *v.*

[Warder v. Tainter.]

Rayner, *Doug.* 637), has not been regarded as sufficient to make it necessary here. And, indeed, when we come to reflect upon the reason given why the goods of the defendant may be taken in execution upon a *fieri facias* issued after his death, but tested in his lifetime, to wit that it binds the goods from the test, which is before the death, and being a lien upon them at the time they come into the possession of the executors or administrators, the sheriff therefore, may seize them under the *fieri facias*; 6 *Bridg. Rep.* 468; we might very naturally be led to ask, why the lands might not as well be taken in execution upon the death of the defendant without a *scire facias*, wherever they are bound by the lien of the judgment upon which it is sued out. It is clear that neither the death of the defendant in such case, nor even an alienation of the lands by the defendant in his lifetime for a valuable consideration after the lien has attached, can prevent their being taken in execution to satisfy the judgment. And where there are no personal assets to satisfy the judgment or they are not liable to pay it, or where it is for a mortgage debt and the land alone is liable for the payment of it; what possible benefit can accrue to the heirs, devisees or terre tenants from issuing a *scire facias* against the executors or administrators, and giving them notice? I confess that I am unable to discover any, though it may be possible that there is. But as I do not consider this point necessarily involved in the decision of the case under consideration, I shall avoid giving a definitive opinion in respect to it, but will refer to one or two cases, to show that a sale of goods or other property made under a *fieri facias irregularly* issued, has been adjudged good. In Jeanes *v.* Wilkins, 1 *Ves.* 195, it was held that a leasehold of ninety-nine years, taken in execution and sold by the sheriff under a *fieri facias* sued out after the body of the defendant had been taken in execution upon a *capias ad satisfaciendum*, and during the continuance thereof, was good, and that the purchaser acquired a good title thereby to the estate. Lord Hardwicke, in giving his opinion, holds the following language: "it is said that by law, during the existence of the *capias*, and the person in custody, a *fieri facias* ought not to be taken out; and certainly it ought not; although if the defendant dies the plaintiff may have a new execution, as upon the statute of 21 *Jac.* 1. Yet while that continues, resort cannot be had to any other execution; and the court, without putting the party to his *audita querela*, would, as I apprehend, set it aside on motion. But yet that *fieri facias* was *not void*, and the sheriff might justify taking the leasehold by that writ; and so may the purchaser under the sheriff, *who gives a title*, otherwise it would be very hard, if it should be at the peril of the purchaser under the *fieri facias*, whether the proceedings were regular or not." So in Emmett *v.* Thorn, 1 *Maule & Selw.* 425, where the sheriff had sold a term under a writ of *fieri facias*, which was afterwards set aside for *irregularity*, as it was stated on the record, without further explanation of the reason for setting it aside, and the produce of the sale directed to be returned to the termor; it was held that the termor could not

[Warder v. Tainter.]

recover his term against the sheriff's vendee.　And this seems to be but a proper application of the principle laid down in Manning's case, 8 *Co. Litt.* 191, and recognized in Drury's case, *Ibid.* 284; "that the sale by the sheriff by force of the *fieri facias* shall stand, though the judgment be afterwards reversed, but the plaintiff in the writ of error shall be restored to the value, for the sheriff who made the sale had *lawful authority* to sell, and by the *sale* the vendee acquires an *absolute right of property :*" see also *Bac. Abr., tit. Execution, Q.*

But beside the case already mentioned, with the authorities in support of it, of taking out an execution without a *scire facias* after the death of the defendant where it may be tested in his lifetime, there are other cases in which it is not required to sue out a *scire facias* at all, and executions may be issued and tested at any time after the death without it.　Upon a statute merchant and a recognizance in the nature of a statute staple, which are given by statute, the cognizee may sue out execution against the lands of the cognizor, even where he is returned dead by the sheriff, without a previous *scire facias* against the heir ; or he may sue it out against the heir and terre tenants at his election.　2 *Saund.* 71, *b, note* by Sergeant Williams, who cites, 2 *Inst.* 471, 395 ; *Bro., Statute Merchant,* 16, 43, 50; *Bac. Abr., tit. Execution* 335, *Scire Facias* 413.　Now the award of execution in a *scire facias* upon a mortgage in this state is not a proceeding at common law, but given by our act of assembly; and there is still less objection perhaps to the execution being sued out after being awarded by the judgment of the court against the mortgaged land, without a previous *scire facias* to the heirs, devisees or terre tenants, in case of the defendant's being dead, than in the case of a statute merchant, or recognizance in the nature of a statute staple.　In the case of the mortgage, the identical land embraced within it, is, as it were, condemned and decreed by the judgment of the court to be sold without any further hearing of the parties, and the execution is merely a direction from the court to carry their judgment, which is specific, into effect; no other than the land contained in the mortgage, which is referred to in the judgment, can be sold.　In this respect, then, it may be said to be like to the case of land seized under a *fieri facias,* and condemned to sale in the lifetime of the defendant, who dies before the return day of the writ, or before a writ of *venditioni exponas* is or can be sued out, without which a sale cannot be made ; in which it is every day's practice to sue out the *venditioni* after the death of the defendant at any time, without any previous *scire facias,* and to sell under it the land seized under the *fieri facias.*　Commonwealth for Pennock's executors *v.* M'Kisson, 13 *Serg. & Rawle* 147.

But the case of the plaintiffs in error is not that of a sale made under an execution issued after the death of the defendant upon a judgment given against him in his lifetime, but the case of a sale made under an execution sued out upon a judgment rendered in a suit commenced against him after his death ; so that the error com-

plained of does not go to the execution and sale, but to the judgment itself. And having shown that the judgment, if not altogether irreversible, can at most only be reversed or annulled by the defendants in error upon a writ of error; it would seem to be rather irregular, and cutting the knot instead of loosing it, to permit that to be introduced in a collateral suit for the purpose of annulling the execution of the judgment and the sale and all that was done under it, which is properly an objection to the judgment itself, to show that is erroneous and voidable, not void, and for that purpose can only be done in a writ of error, and not in a collateral action.

Again, suppose that the judgment in the *scire facias*, being voidable only, were reversed, the plaintiffs in error would be protected by the act of assembly of 1705, under which the proceeding was had. The 9th section of this act, *Purd. Dig.* 292, provides, "that if any of the judgments which do or shall warrant the awarding of said writs of executions, whereupon any land, tenements or hereditaments have been or shall be sold, shall at any time hereafter be *reversed* for *any* error or errors; then, in *every* such case, *none* of the said lands, tenements or hereditaments so as aforesaid taken or sold, or to be taken or sold upon executions, *nor any part* thereof, shall be *restored, nor* the *sheriff's sale* or delivery thereof *avoided,* but restitution *only* of the money or price for which such lands were sold, or shall be sold." And, accordingly, in Hiester *v.* Fortner, 2 *Binn.* 40, it was held that if a judgment under which land has been taken in execution and sold, be reversed, the purchaser under the sheriff's sale shall hold the land nothwithstanding. Now this act applies as well to cases of judgments reversed for errors of fact as of law. For although the form of entry originally may have been a little different, by using the word "*revocetur,*" in entering a judgment reversed for error of fact, and the word "*reversetur*" in entering a judgment reversed for error of law, yet they are both substantially the same, and there is not the slightest ground to warrant the construction of the act, that the latter only was intended to be embraced. Arnold *v.* Sanford, 15 *Johns. Rep.* 534.

Under every aspect, then, in which this case has presented itself to my mind, I am satisfied that the sale of the land under the proceedings had on the mortgage was valid; and that the court below not only erred in admitting the evidence to show the death of Charles Tainter, but that they also erred in their charge afterwards to the jury, as to the effect of his death upon the sale.

In regard to the second question, I also think that the court erred in their direction to the jury. They seem to have entertained the notion, and said to the jury, that the possession of the land by the defendants below was tortious. Now this was clearly a misapprehension on the part of the court; for, admitting that the sale under the proceedings on the mortgage was an absolute nullity, and that it passed not even the shadow of a title to the purchaser, yet he, being the assignee of the mortgage, and the money due on it having

[Warder v. Tainter.]

become payable, had a right under the mortgage to take the possession of the land, and having obtained it peaceably, either with or without the assent of the mortgagor or his heirs, had an undoubted right to hold it until he was satisfied the mortgage debt. This right, by his will, he passed to his executors, the defendants below, who had not only acquired the peaceable but also the lawful possession of the land, and as a pledge had a right to hold it under the mortgage; which gave them not merely an equitable but a legal title to the possession until the debt should be paid. As long as the debt remained unpaid, the plaintiffs below had no right, either equitable or legal, to the possession of the land, and therefore could institute and maintain no action for the recovery of it before they extinguished the debt. It was not sufficient, therefore, to entitle them to recover, that they brought the amount of the debt into court on the trial of the cause : they ought at least to have tendered it before bringing their action.

Judgment reversed.