WILLIAM L. WEBBER, *Administrator of the Estate of* STEPHEN D. SAYRE, *deceased*, vs. ELIJAH STANTON.

IF a plaintiff die between the trial by the Court and judgment, and the judgment is entered of the actual date when rendered, it is not void. Suit by the personal representatives of the deceased plaintiff may be brought on it, and it will be held as conclusive as though it had been entered, *nunc pro tunc*, as of the date of the trial.

*Saginaw Circuit Court*, 1864.

*Wm. L. Webber* in Person.

*A. C. Maxwell* for Defendant.

*By the Court*, SUTHERLAND, J.—This action is brought to recover the amount of a judgment in this Court rendered December 7, 1855, and of a decree for costs made in Chancery December 8, 1854, against the defendant in favor of Stephen D. Sayre, now deceased. No question is raised except as to the plaintiff's right to recover on the judgment. Sayre died on the day succeeding the trial before the Court without a jury, and two days before the rendition of the judgment.

It is insisted for the defendant that the suit abated on the death of Sayre, and that the judgment, being rendered afterwards, is void.

There is no doubt that by the common law a suit abates on the death of a sole plaintiff before judgment. 2 *Tidd's Prac.*, 116; *Hildreth vs. Thompson*, 16 *Mass. R.*, 191.

But as the rule was technical and served no substantial purpose of justice in cases in which the death occurred after the commencement of the term in which the trial was had, Courts

have endeavored to save to the successful party the fruits of his recovery by resort to the fiction of making all judgments bear date of the first day of term. 1 *Burr. Pr.*, 281; 18 *Wend.*, 653; 7 *Cow.*, 281; 7 *Term. R.*, 31. Judgments were, however, frequently delayed until after the term: then, to prevent the effect of the death of a party in abating the suit, Courts were accustomed to allow the judgment to be entered *nunc pro tunc*, as of the date when the deceased party was living, if the party recovering was then entitled to judgment. *Earle vs. Brown*, 1 *Wilson*, 302; *Spaulding vs. Congden*, 18 *Wend.*, 543; *Ryghtmyre vs. Durham*, 12 *Wend.*, 245; *North vs. Pepper*, 20 *Id.*, 678; 1 *Bac. Abr.*, 15; *Tooker vs. Duke of Beaufort*, 1 *Burrows*, 147; *Trecawley vs. Bishop of Winchester*, *Id.*, 221, 226; *Mayor, &c., vs. Berry*, 4 *Id.*, 2277; *Goddard vs. Bolster*, 6 *Me.*, 427; *Toulmin vs. Anderson*, 1 *Taunt.*, 385; *Mackay vs. Rhineland*, 1 *John. Cas*, 410; *Bridges vs. Smith*, 8 *Bing.*, 28; *Green vs. Cobden*, 4 *Scott*, 486; *Key vs. Goodwin*, 1 *Moore & Scott*, 620.

The application to have the judgment so entered was addressed to the discretion of the Court, and unless within the statute of 17 *Charles II.*, was refused, if the delay was caused by the laches of the party or his representatives, or if some prejudice would arise to the other party to which he otherwise could not be subject. *Freeman vs. Trunah*, 12 *Com. B.*, 406; *Wilkes vs. Perks*, 5 *Man. & Gr.*, 376.

The judgment proved in this case was delayed wholly by the act of the Court. It was, therefore, an undoubted case for allowing the judgment to be entered anterior to the plaintiff's death. It was not so entered; nor is it within the statute of Charles II., as the death did not occur *between verdict and judgment*, unless the doctrine of relation to the first day of the term is in force.

The judgment roll, of that system of practice which recognized that fiction of relation, showed no other date than the first day of the term; and to prevent one party gaining a preference over another by reason of the Court's inability to try and decide all the cases in one day, and to overreach fraudulent dispositions of property on which the judgment would be a lien, or out of which it could be satisfied, all judgments, in the absence

WEBBER v. STANTON.

of any other date, are deemed to have been recovered on the first day of the term. *Couth vs. Walker*, 2 *Leigh*, 268 ; *Withers vs. Carter*, 4 *Gratt.*, 407.

That doctrine, however, was held not to apply after a statute had been enacted requiring the date of the judgment entry to be expressed, (*Lambirth vs. Barrington*, 2 *Bing. N. C.*, 149,) nor did it ever apply, it would seem, if the state of the case was such, for any reason of which the Court was judicially cognizant, that judgment could not have been rendered on the day on which it would otherwise bear date by rotation, (*Swan vs. Broom*, 3 *Burrow*, 1595 ; *Wynne vs. Wynne*, 1 *Wilson*, 35, 42,) or if there was any memorandum, or the like, in the record showing another date. 3 *Salk.*, 212 ; *Miller vs Bradley*, 8 *Mod* , 190.

It is obvious, therefore, that since our record consists of the journal entries and files, each of which has a recognized date, no other can by any fiction be substituted.

Hence, the validity of the judgment in question depends on whether, if rendered at a time when the Court would deem it proper to render it, even though advised then of the death, and for regularity would order it entered *nunc pro tunc*, it shall be held irregular because entered at the actual date of the determination; and if irregular, whether it is void or only voidable.

If Courts have no jurisdiction, by reason of a party's death, to render a judgment, then it ought to follow, and would, as a necessary consequence, that they would refrain from rendering it if the death were seasonably suggested. Courts do not, however, decline, in such cases, to pronounce judgment. Though they have been accustomed to affix another date to the adjudication, yet that ante dating should not be regarded as done to hide under the sanctity of a judicial record, which cannot be contradicted, a fatal defect of jurisdiction. It would be a reproach to any Court to usurp authority and after its exercise to conceal the excess of jurisdiction by a false record. By proceeding to judgment as they do after the death of a party has been suggested, Courts recognize the power to adjudge notwithstanding the death and the consequent technical abatement of the suit. This circuity, while it is a tacit concession of the irregularity of a decision subsequent to the death of a party, is

an assertion of jurisdiction; but as judgments so rendered might sometimes prejudice the rights of one of the parties, or his representatives, or the rights of third persons, it is not a matter of course to render them. The course of decisions on that subject has clearly marked the boundaries of that discretion which is exercised in pronouncing or declining to pronounce judgments *nunc pro tunc.* It has been usually exercised in granting or denying a motion to enter a judgment as of a former date. But since judgments are not liens upon property until the levy of execution, the rights of *bona fide* purchasers and incumbrancers cannot be overreached. There are not the same considerations as formerly to restrain Courts in the exercise of this discretion.

If verdicts and judgments rendered after the death of a party were deemed regular, the rights of parties, and especially those of the deceased party's representatives, might frequently be sacrificed because of the absence of any appeal to this discretion. There is, therefore, a peculiar propriety in obliging the party who seeks the benefit of the judgment to move for regularity in such form as will bring the fact of the death to the notice of the Court.

A judgment entered after the death of a sole plaintiff is, consequently, irregular in a technical sense unless it occur between verdict and judgment. On a motion to set it aside, the Court would treat it like other irregular proceedings. If no rights had been violated, or, in other words, if it were a case in which the Court would proceed to judgment after the suggestion of a party's death, and permit it to be entered *nunc pro tunc,* the judgment would be vacated only to be entered again of a prior date as in a proper case to be prosecuted or defended, under the statute, by representatives. 2 C. L., § 4204; *Stickney vs. Davis,* 17 *Pick.,* 169; *Sprongstiadvs.- Jayne,* 4 *Cow.,* 423.

If a motion were made in the case in which the judgment in question was rendered, I cannot doubt it would have resulted in the judgment being vacated and re-entered of the 4th day of December, 1855, when trial took place. The plaintiff was then entitled to judgment, and the persons entitled to succeed to his rights should not suffer by the delay while the case was under advisement. All parties who could move to set it aside or have

a review on error are concluded by that judgment in any collateral proceeding. As to them, it was only voidable and good until set aside or reviewed.

2 *Bac. Abr. lit. Error A* ; *Cro. Elir.* 199 ; *Warder vs. Tainter,* 4 *Watts,* 270, 280 ; *Griswold vs. Stewart,* 4 *Cow.,* 457 ; *Jackson vs. Robins,* 16 *John. R.,* 537 ; *Jackson vs. Delancy,* 13 *Id.,* 537.

Judgment for plaintiff for $1,066 55.