———O———

JOHN P. LEWIS, Defendant in Error, *vs.* THOMAS COOMBS, Plaintiff in Error.

1. *Execution—Death of defendant, between levy and sale, no notice being given to sheriff or purchaser, does not avoid sale collaterally.*—Where judgment is obtained in a suit by attachment, and between the levy of execution and sale defendant dies, his death, not being brought to the knowledge of the sheriff or the purchaser, will not render the sale and deed thereunder nullities, which may be, for that reason, impeached in a collateral proceeding.

*Error to Atchison Circuit Court.*

*W. P. Hall, with Bennett Pike,* for Plaintiff in Error.

The death of Tarleton, between the issue of the execution and the sale, did not render the sale void, but at most only voidable. (Tidd's Pr., 936; Cox vs. Wilson, 1 Monr. [Ky.], 95; McKinney vs. Scott, 1 Bibb., 155; Reardon vs. Searcy's Heirs, 2 Bibb., 202; McNair vs. Biddle, 8 Mo., 257; Voorhees vs. U. S. Bk., 10 Pet., 472; Jackson vs. DeLancy, 13 Johns., 535; Warder vs. Tainter, 4 Watts, 270; Coleman vs. McAnulty, 16 Mo., 173; Union Bk. vs. McWharters, 52 Mo., 34; 1 Blackf., 210; Wood vs. Morehouse, 1 Lansing, 405; Aycock vs. Harrison, 65 N. C., 8; 2 U. S. Dig., N. S., 286; Hay vs. Thomas, 56 N. Y., 522; Blair vs. Ship "Charles Carter," 4; Cr., 328; Cooper vs. Reynolds, 10 Wall., 308; Hardin vs. Lee, 51 Mo., 241; Paine vs. Mooreland, 15 O., 435.

*Hitchcock, Lubke & Player,* for Defendant in Error.

I. No administrator or public officer can sell and convey a good title to land, unless authorized to do so by express law. (Thatcher vs. Powell, 6 Wheat., 125.)

II. There is a vital distinction between process irregular and process anauthorized. A sale under the latter being wholly null and void, may be attacked collaterally. (Mitchell vs. St. Maxent, 4 Wall., 242; Erwin vs. Dundas, 4 How. [U. S.], 58; Ryan vs. Carr, 46 Mo., 486; Merchant's Bank vs. Evans, 51 Mo., 335; Strain vs. Murphy, 49 Mo., 341; Durette vs. Briggs, 47 Mo., 361; Hardin vs. McCanse, 53 Mo., 255; McClure vs. Logan, 59 Mo., 234; Higgins vs. Peltzer, 49 Mo., 155; Fithian vs. Monks, 43 Mo., 520; Smith vs. Cockrell, 6 Wall., 756; 1 Cow., 735; 3 Wils., 545; 3 Johns., 523; 2 Com. R., 702.)

1. Although in the case at bar the special execution was issued during the lifetime of Tarleton, his death intervening before levy and sale, rendered the sale a nullity under the laws of this State. The sheriff had no power to sell.

(*a.*) The questinn here at issue depends exclusively on the construction and effect of the statutes of this State, and the settled policy of this State. (Munday vs. Ryan, 18 Mo., 29 ; Carson vs. Walker, 16 Mo., 79.)

(*b.*) Gen. Stat., 1865, ch. 141, §§ 43–46, forbid such sale. Gen. Stat., 1865, 637, §§ 16, 22, also prohibit it. And by §§ 1, 11–21, ch, 123, Gen. Stat., 1865, it is provided that judgments shall be classified against the estate of the deceased defendant, and the lien of the judgment satisfied by the administrator from the sale by him of the realty charged with such lien.

(*c.*) The death of the debtor arrests at once the ordinary process of collection, whether ascertained by judgment or not. No execution can issue or, if issued, be enforced. The whole matter must go into probate. (Miller vs. Doan, 19 Mo., 650 ; Carson vs. Walker, 16 Mo., 68 ; Sweringen, vs. Eberius, 7 Mo., 422; Prewitt vs. Jewell, 9 Mo., 732; Kerr vs. Weimer, 40 Ill., 544.)

III. The defendant in error having title through the court of probate, must prevail in this cause.

NAPTON, Judge, delivered the opinion of the court.

This was an action of ejectment, to recover forty acres of land in Atchison county. The facts were, that this land, along with other lands, was attached in a suit by the Bank of Kentucky, against one Tarleton, whose title is not disputed, and that a special judgment in the attachment suit was rendered in the Atchison Circuit Court at the November term, 1866, upon publication ; that execution issued on the judgment, and was delivered to the sheriff on the 14th of December, 1866 ; that the land in controversy was levied on April 10th, 1867, and sale made in May, 1867, and that one Thompson, from whom defendant bought, became the purchaser. It further appears that said Tarleton was alive when the execution issued, but died before the levy and sale. And the plaintiff bought the land at the sale made by an administrator of Tarleton, several years after ; in regard to the regularity

of which levy, sale and deed by the sheriff, there is no controversy.

It was conceded that the death of Tarleton was unknown to the sheriff, and the purchaser, and that no proceeding in the court from which the writ issued, had occurred. And the only question in the case is whether this levy, sale and deed made after Tarleton's death, were nullities, and are so to be regarded in this ejectment.

Our attachment law makes ample provisions in regard to the enforcement of attachments, after the death of the defendant. The lien is not destroyed, nor is the action to be dismissed, but the action and proceedings are directed to be proceeded on to final judgment, as if the defendant were living. The executor or administrator is required to be made a party, and when there is no executor or administrator, the court is directed to appoint an attorney to represent the interests of the defendant.

Section 45 provides, that "if judgment shall be rendered in the attachment in favor of the plaintiff, as provided in the 43rd section, no execution shall issue thereon, requiring the sale of any property or effects attached, as belonging to the defendant; but all such property and effects shall be sold, and the proceeds thereof appropriated in the manner provided by law respecting administrators and executors."

Section 46 is, that "after the death of any defendant, no court or judge shall order, as above directed, the sale of any property or effects attached, as belonging to such decedent; but the same shall be sold and the proceeds thereof appropriated in the manner provided by law respecting administrators and executors."

Our law in regard to judgments and executions may also be quoted in this connexion. "Section 16 of the act relating to judgments, declares, that if any defendant die after his real estate shall have been seized in execution, the service thereof shall not be completed, but the sheriff shall return the execution together with the fact of the defendant's death, which shall be a sufficient indemnity to him for his failure to proceed."

And again, section 22: "No execution shall issue on any judgment or decree rendered against the testator or intestate in his lifetime, or against his executors or administrators after his death, which judgment or decree constitutes a demand against the estate of any testator or intestate, within the meaning of the statute respecting executors and administrators; but all such demands shall be classed and proceeded on in the court having probate jurisdiction, as required by said statute."

Executions against the property of dead persons have no doubt been prohibited in this State, since the act of 1827, and it has been—as is shown in the very elaborate and able argument of the counsel for defendant—the settled policy of our legislature to require a resort to the Probate Court to settle any controversies in regard to the estates of dead men.

But the validity of the levy and sale and deed in this case, is another question. There could be no question of the validity of this sale at common law. Our law does not allow an execution against a dead man's estate; but who is to take notice of his death, the heirs or the sheriff? The defendant may be in China or in Cuba, he may be dead or alive, when the execution is levied! Does our statute mean to require the sheriff to inform himself on this point?

There is no doubt that our statutes have since 1827, prohibited executions on the estates of dead men, and various provisions have been enacted to enable the representatives of the deceased to avoid such executions; but as to an execution against a man's property supposed to be alive, and of whose death the officers had no information, the question is different.

By the common law there could be no question of the validity of such a sale. That subject was examined by Judge Kennedy, in the case of Warder vs. Tainter, (4 Watts, 270) with an ability and thoroughness of investigation which need no commendation or repetition here; and this case was quoted by our court in Coleman vs. McAnulty, (16 Mo., 173) with approbation.

What is the sheriff to do in such cases? He is not informed of the death of the defendant; and he cannot return the fact that he is dead, as he is not advised of it. He must of course sell the land under the writ, and return the sale. The defendant is probably a non-resident. Whose business is it to bring to the court information of his death? Who would be most likely to know of this event?

The return of the sale is virtually a return that the defendant was alive, when the levy was made and when the sale took place. This return was unimpeachable, except in an action against the sheriff or other direct proceeding to set aside the sale. The representatives of the dead man could contradict the return, and their suggestion would have stopped the execution in a proceeding before the court from which the writ issued, as clearly appears from our law. But no representatives appear; there is nothing to show that the defendant is dead, when the execution is levied, or when the property is sold; the defendant may have been in China at that time. The property sold was duly attached according to law, and sold under such attachment; and the question in this case is, whether proof in the ejectment suit, that the defendant was dead at the time of the sale or levy shall defeat the title of the purchaser. If it could be thus impeached in a collateral proceeding, great injustice would result to the purchaser.

It may be conceded that a levy and sale of a dead man's estate, known to be such by the officer, is a nullity; but it does not follow that a sale of property under an attachment against a man not known to be dead, upon publication, can be treated as a nullity in a collateral proceeding, on the ground that the defendant was dead when the property was sold; and so it was conceded in Coleman vs. McAnulty.

That case, it is true, was one in which the plaintiff was dead, and no inference could be drawn that a judgment against a dead defendant could be sustained; but the judge delivering the opinion, adopts the reasoning of Mr. Justice Kennedy in the case in 4 Watts, which applies to defendants

4—VOL. LX.

as well as plaintiffs, and in the Union Bank vs. McWharters, the case is followed without hesitation and without discussion. (52 Mo., 35.)

We have been referred to the opinion of the Supreme Court of Texas, in the case of Conkrite vs. Hart & Co., 10 Tex., and we entirely concur in the opinion that the probate laws have provided here, as well as in Texas, for a transfer of all proceedings instituted against a defendant, upon his death, to the Probate Court; but we think it is a *non sequitur* from the premises that therefore a sale under an execution, made after the death of the defendant, in attachment or other proceedings *in rem*, is a nullity, and transfers no title. Such inference is against all the principles of common law, and would overthrow titles acquired fairly and under the strictest compliance with law.

In proceedings by attachment, or in foreclosure of mortgages, it may well happen that the defendant is a non-resident, or becomes such after service; and, whether he is alive or dead, is a fact with which the sheriff cannot be supposed to be acquainted, and of which he is not supposed to be cognizant. He may be in some remote part of the world, but the presumption is, that he is alive; and this presumption is indulged by the law in more important matters than sales under execution.

The sheriff's return, levy, sale and deed, all of which are made under a valid judgment and under a valid writ in this case, authorize the purchaser to presume that the party was alive when this writ was levied. Shall a representative of the defendant be allowed, ten years afterward, to set aside this sale and title under it, in a collateral action, on the ground that the defendant was dead a week or a month before the levy? No confidence could be placed in such proceedings, especially in regard to defendants attached as non-residents, if such a construction is to be placed on our statutes.

The jurisdiction of the court over the subject matter, is beyond dispute, and the judgment was in all respects regular, and the execution on it was altogether proper. But oc-

currences, it is said, took place after the issue of the writ, which rendered its levy improper and illegal. The defendant in this case died in Texas, or it matters not where, but his death was unknown to the officer to whom the writ was directed, and to the purchaser at the sale. Does this fact paralyze the efficacy of the writ, and destroy all title acquired under its execution ?

We refer to the opinion of Mr. Justice Kennedy, in Warder vs. Tainter, as a complete refutation of such deductions, both upon authority and principle; and there is nothing in our statutes to prevent the application of these well settled principles here.

The judgment is reversed: the other judges concur except Judge Vories, who had been of counsel.