# THE STATE ex rel. JANE C. POTTER et al. v. HENRY C. RILEY, Judge.

## In Banc, May 1, 1909.

1. **SETTING ASIDE JUDGMENT: For Irregularities.** Section 795, Revised Statutes 1899, permitting the setting aside of a judgment for irregularities upon a motion filed within three years after the termination of the term at which the judgment was rendered, contemplates a motion based upon an irregularity which is patent of record, and not one depending upon proof *dehors* the record.

2. ————: **Defect Not Patent: Writ of Error Coram Nobis.** If the death of the plaintiff, after the interlocutory decree and before dismissal, is not apparent of record, and proof of his death must be shown by evidence *aliunde*, the remedy, to have the order of dismissal set aside, is the writ of error *coram nobis*, the office of which is to bring the attention of the court to, and obtain relief from, errors of fact, such as the death of either party pending the suit and before judgment therein.

3. ————: **Writ of Error Coram Nobis: Limitations.** No statute of limitations applies to the writ of error *coram nobis*.

4. ————: ————: **Proper Parties.** A writ of error *coram nobis* can be procured only by one who is a party or privy to the record, or injured thereby. The heirs of the deceased plaintiff, in the cause dismissed after his death, upon motion of his attorney, and after an interlocutory decree and before final judgment, are the proper parties to bring the writ of error *coram nobis* to set aside the order of dismissal and reinstate the cause.

5. ————: **Death Pending Suit: Collateral Attack.** If the validity of the judgment of dismissal is dependent solely upon the one question of the death of the plaintiff pending the suit, then such judgment is only voidable and not void, and cannot be attacked or impugned in a collateral proceeding, such as a writ of mandamus to compel the trial court to set aside the judgment of dismissal and reinstate the cause.

6. ————: **Order of Dismissal: After Final Judgment: Void.** If there was a final judgment in the cause, then an order of dismissal cannot properly be entered and if entered at a later term it is *coram non judice*.

7. ———: ———: ———: Appointment of Referee: Voidable. Where "the issues of the original suit were finally submitted" to the trial judge and a decree was rendered and entered of record in favor of plaintiff determining that he was the owner of the said real estate and that certain deeds given by plaintiff to defendant were in fact mortgages, and by consent of all parties the court appointed a referee "to determine the value of certain improvements erected on said lands" by plaintiff and "to take an accounting to ascertain the state of accounts between the parties in reference to the subject-matter of the suit," and thereafter the referee took evidence, and made his report, to which defendant filed exceptions, and thereafter plaintiff died, and his attorney after his death and before said exceptions were heard dismissed the suit, there was no final judgment in the case. The preliminary decree, settling the equities and appointing the referee, contemplated that he would make a report, finding facts and issues, subject to exceptions, and subject to the approval of the court, and such a decree is not a final judgment. And the judgment of dismissal was not void, unless the cause had already been submitted to the court within the meaning of the statute.

8. ———: ———: After Submission. If the whole case is under submission, an order of dismissal is void, under Sec. 639, R. S. 1899.

9. ———: ———: ———: No Hearing on Referee's Report. Where there is nothing to show that there had been any hearing upon the referee's report and exceptions thereto filed, the whole cause was not submitted within the meaning of the statute, and the order of dismissal is not void.

10. ———: Dismissal: Voidable: Appeal: Mandamus. Where the judgment of dismissal was only voidable and not void, the original plaintiff or his privies have the right to file their motion to vacate for error of fact, which motion takes the place of the writ of error *coram nobis* at common law where the defect is not apparent of record, and if that motion is overruled they are entitled to an appeal; and the order of dismissal being void neither (1) because there was no final judgment in the original cause nor (2) because there had not been a submission of the whole case, the movants are not entitled to the writ of mandamus to compel the trial court to sustain their motion and reinstate the case, for that is a collateral attack on a voidable judgment; but they are entitled to an appeal from the judgment overruling their motion, for that judgment is final and the motion is a direct attack upon the order of dismissal.

11. MANDAMUS: Facts Admitted By Return. All undenied allegations found in the alternative writ in mandamus stand as admitted. All matters well pleaded by relators which are not denied by respondent in express terms are admitted to be true.

## Mandamus.

PEREMPTORY WRIT DENIED.

*Fordyce, Holliday & White* for relators.

(1) 1. L. D. Grove's authority as attorney **for** James M. Potter being totally dissolved by Potter's death, Grove had no authority to move for a dismissal. Railroad v. Woodson, 110 Mo. App. 208; Prior v. Kiso, 96 Mo. 303; Judson v. Love, 35 Cal. 463; Risley v. Fellows, 10 Ill. 531; Gleason v. Dodd, 4 Metc. (Mass.) 333; Weeks on Attorneys at Law (2 Ed. 1892), secs. 248, 256. 2. There had been no administration on Potter's estate, hence Grove had no authority to appear for Potter's personal representative. Prior v. Kiso, 96 Mo. 303; Weeks on Attorneys at Law (2 Ed. 1892), sec. 256. 3. Relators gave Grove no authority to appear for them, and the attorney of the ancestor does not become the attorney for the heirs without a new appointment. Putman v. Van Buren, 7 How. Pr. 31; Weeks on Attorneys at Law (2 Ed. 1892), sec. 256. 4. After the death of Potter, no steps should have been taken in the case until Potter's death had been properly suggested and the case revived. Any steps taken after Potter's death and before the legal suggestion thereof are nullities. R. S. 1899, sec. 756; Sargeant v. Rowsey, 89 Mo. 617; Railroad v. Woodson, 110 Mo. App. 208; Judson v. Love, 35 Cal. 463. 5. The dismissal ordered after the death of Potter and the consequent revocation of the authority of Potter's attorney is ineffectual and void as to relator's rights; there was no party before the court as to the interest of relators in the lands in controversy, and no one authorized to represent their interests. The title to the land had descended to the relators instantly on Potter's death intestate, and no notice to come in had been given to the heirs. Voorhis v. Gamble, 6 Mo. App. 1; Sargeant v. Rowsey, 89 Mo. 622; Rentschler v. Jamison, 6 Mo. App. 135; Weller

v. Easton, 81 Mo. App. 660; Hinkel v. Kerr, 148 Mo. 48; Judson v. Love, 35 Cal. 463. 6. Even if it were possible to conceive that Grove had authority to dismiss the case, respondent had no authority or right to do so. Respondent, in making his order of dismissal violated a mandatory statute, Sec. 639, R. S. 1899, which was at that time (1896) in force as Sec. 2084, R. S. 1889, which provides that after a case has been finally submitted the court cannot allow it to be dismissed. 7. A suit cannot be dismissed after a final decree has been rendered and after the term at which the final decree was rendered has elapsed, even with consent of the parties, as such decision creates and fixes new rights and interests in the subject-matter of the controversy, and an attempted dismissal is *coram non judice* and void. Warren v. Manwarring, 173 Mo. 21; Danforth v. Love, 53 Mo. 217; Mohler v. Wiltberger, 74 Ill. 163; Long v. Thwing, 9 Ind. 179; Lashley v. Hogg, 11 Vesey, Jr. 602; Clarkson v. Scrogins, 2 T. B. Monroe (Ky.) 52; Egg v. Devey, 11 Beavan 221. There can be but one final judgment in a case. If the court has rendered a final judgment at one term, another final judgment rendered at any subsequent term is void. Warren v. Manwarring, 173 Mo. 21. 8. It is now the plain duty of the respondent to rescind its void order of dismissal and to redocket and proceed with the case according to law and justice, so that plaintiff's death, which occurred prior to said dismissal and subsequent to a final submission, final judgment and the expiration of the term of court of said final judgment, may be properly suggested, the cause revived and exceptions filed to the report of the referee in said case passed upon, and the relators' rights in the matters in controversy set at rest. State ex rel. v. Nabor's Heirs, 7 Ala. 459; Ex parte Swan, 23 Ala. 192. (2) Mandamus lies to compel a court to reinstate and proceed with a cause properly before it, which it has

improperly dismissed or dropped from its docket. Miller v. Richardson, 1 Mo. 310; Astor v. Chambers, 1 Mo. 191; State ex rel. v. O'Brien, 102 Mo. 254; State ex rel. v. Cape Girardeau Court, 73 Mo. 560; State ex rel. v. Neville, 157 Mo. 386; State ex rel. v. Laughlin, 75 Mo. 358; State ex rel. v. Dearing, 173 Mo. 492; State ex rel. v. Klein, 140 Mo. 502; Costello v. St. Louis Circuit Court, 28 Mo. 259; Austin v. Probate Court, 35 Mo. 198; State ex rel. v. Renick, 157 Mo. 292; State ex rel. v. Gideon, 119 Mo. 94; State ex rel. v. Smith, 172 Mo. 446; State ex rel. v. Smith, 172 Mo. 618; State ex rel. v. McCracken, 60 Mo. App. 650; Insurance Co. v. Comstock, 16 Wall. (U. S.) 258; Ex parte Bradstreet, 7 Peters (U. S.) 634; People ex rel. v. Judge Circuit Court, 27 Mich. 303; People ex rel. v. Judge Circuit Court, 30 Mich. 98; Weeks v. Circuit Judges, 73 Mich. 256; High, Extra. Rem. (3 Ed.), secs. 250, 256, 258. 1. It was the ministerial and statutory duty of respondent not to allow the case in Mississippi county to be dismissed after it had been finally submitted. Respondent had no discretion. R. S. 1899, sec. 639; R. S. 1889, sec. 2084; State ex rel. v. McCracken, 60 Mo. App. 650; State ex rel. v. Reynolds, 121 Mo. App. 699; State ex rel. v. Meier, 143 Mo. 439. 2. Neither appeal nor writ of error would lie from a voluntary dismissal or a motion to set aside a voluntary dismissal. Koger v. Kays, 57 Mo. 329. 3. Neither appeal nor writ of error lies from a refusal to proceed with a case or from an order dropping the case from the docket; mandamus is the proper remedy. Miller v. Richardson, 1 Mo. 310; Astor v. Chambers, 1 Mo. 191; State ex rel. v. O'Bryan, 102 Mo. 254; State ex rel. v. Smith, 172 Mo. 446; State ex rel. v. Smith, 172 Mo. 618. 4. Where the remedy by appeal or writ of error lies, but is not as adequate or as speedy as mandamus, mandamus will lie. State ex rel. v. Reynolds, 121 Mo. App. 699; State ex rel. v. O'Bryan, 102 Mo. 254; State ex rel.

v. Osborne, 24 Mo. App. 309; State ex rel. v. Lafayette Co., 41 Mo. 221; State ex rel. v. Johnson, 103 Wis. 591; State ex rel. v. Clayton, 34 Mo. App. 563. 5. The remedies of appeal and writ of error would be too slow and totally inadequate in this case. Remedies to be adequate "must reach the end intended and actually compel the performance of the duty refused." State ex rel. v. McCracken, 60 Mo. App. 650; State ex rel. v. Renick, 157 Mo. 292.

*Lew R. Thomason* for respondent.

The circuit court of Mississippi county, having jurisdiction of the subject-matter of the suit in the case of James M. Potter vs. Thomas Bullivant and others, and having acquired jurisdiction of the persons of the parties thereto, its judgment of dismissal, although rendered after the death of Potter, the plaintiff, is not void or subject to collateral attack; it is voidable only, and can only be set aside in an appropriate proceeding, and is valid until set aside. Black on Judgments, sec. 200; Shea v. Shea, 154 Mo. 599; Hinkle v. Kerr, 148 Mo. 43; Coleman v. McAnulty, 16 Mo. 193. The judgment of dismissal not being void, but only irregular, cannot be set aside upon a motion filed eleven years after its rendition. R. S. 1899, sec. 795; Jamison v. Kinsey, 85 Mo. App. 301; Craig v. Smith, 65 Mo. 536; Downing v. Still, Admr., 43 Mo. 316; Burgess v. Hitt, 21 Mo. App. 315; Clowser v. Noland, 72 Mo. App. 217. While a void judgment may be assailed collaterally, this rule does not extend to judgments which are erroneous, and voidable only. In such cases the aggrieved party must seek his remedy by appeal, or in some other appropriate proceeding to correct the alleged error. Freeman v. Thompson, 53 Mo. 183; McNair v. Biddle, 8 Mo. 257; Van Fleet Collateral Attack, secs. 602-3. Mandamus will not lie to control the discretion of a tribunal acting judicially. State ex rel. v. Flad, 108

Mo. 620; State ex rel. v. Fort, 160 Mo. 97; State ex rel. v. McAuliff, 48 Mo. 112; State ex rel. v. Wilson, 49 Mo. 146; State ex rel. v. McGown, 89 Mo. 156; State ex rel. v. Smith, 105 Mo. 6; High on Extra. Remedies, secs. 147-157. Mandamus will lie, only, where the party complaining has a clear legal or equitable right and has no other specific remedy; it will not lie to correct the alleged errors of the trial court; this can be done only upon appeal or writ of error as the case may require. State ex rel. v. Field, 107 Mo. 450; State ex rel. v. Mossman, 112 Mo. App. 540; Martin v. Martin, 27 Mo. 225; Dunklin Co. ex rel. v. Dist. Court, 23 Mo. 449; State ex rel. v. Ingleman, 86 Mo. 551; State ex rel. v. St. Louis Court, 87 Mo. 374; Costello v. St. Louis Circuit Court. 28 Mo. 259; Ex parte De Groot, 6 Wall. 497.

GRAVES, J.—This is an original proceeding in this court by which relators seek by mandamus to compel Hon. Henry C. Riley, Judge of the Circuit Court of Mississippi county, to set aside an order of dismissal heretofore entered by him in said court in a cause then pending wherein James M. Potter was plaintiff and Thomas Bullivant et al., were defendants, and to reinstate the cause, and to proceed with said cause and to hear and determine the same.

This court issued its alternative writ of mandamus, the allegations of which are, in substance, as follows: That relators and one Francis J. Bullivant, son of Thomas Bullivant, are the only heirs at law of James M. Potter, deceased, who died January 5, 1896; that relators are all non-residents of Missouri, but said Francis J. Bullivant is a resident of Missouri; that two of relators (naming them) are minors and appear by their next friend, Samuel W. Fordyce; that at the time of his death, James M.

Potter was the owner of certain real estate in Butler county, Missouri; that in September, 1890, said James M. Potter instituted in the circuit court of Butler county an equitable action against Thomas Bullivant, Stephen M. Chapman and others to determine their respective rights and interests in and to said real estate; that a change of venue in said cause was granted to the circuit court of Mississippi county; that said cause was dismissed as to all defendants except Bullivant and Chapman; that on October 12, 1892, said cause was finally submitted upon the pleadings and evidence in the said circuit court over which respondent, Henry C. Riley, presided as the regular judge thereof; that the court made and entered of record a decree determining that the said James M. Potter was the owner of said real estate and that certain deeds given by said James M. Potter to Thomas Bullivant were in fact mortgages, and by consent of all parties to the cause appointed J. Perry Johnson as a referee to determine the value of certain improvements in said land erected by Bullivant, and to take an accounting between the parties; that said decree was final and no appeal was taken therefrom; that the referee made and filed his report, to which Bullivant and Chapman filed exceptions; that before said exceptions were passed upon by the court, the said Potter died on the date aforesaid; that on April 7, 1896, the death of James M. Potter not having been suggested to the court in said cause, on the motion of L. D. Grove, who had been the attorney of record for said Potter, the respondent, as judge of said court, wrongfully and unlawfully entered an order or judgment of dismissal in said cause; that James .M. Potter died intestate and no administration had been had upon his estate and all his real estate has descended to relators and Francis J. Bullivant; that on October 8, 1907, relators filed their written motion in said cause and in said court, re-

questing said court to set aside said order of dismissal and reinstate said cause; that respondent wrongfully overruled said motion and refused to reinstate said cause; that respondent at all said times was and is now the judge of said court; that in making said order of dismissal respondent violated section 639, Revised Statutes 1899; that said cause had been finally submitted to respondent and he had no legal right to dismiss the same; that said dismissal was after a final decree and judgment had been entered in the said cause, and after the term had expired at which said decree was entered, contrary to the laws of this State; that the respondent had no right to dismiss the cause upon the motion and suggestion of L. D. Grove, because his authority to act terminated with the death of Potter; that the respondent at the time individually knew of the death of Potter; that the death of Potter had been suggested in another case pending in respondent's court on the same day that the order of dismissal was made; that it is the legal and ministerial duty of respondent to set aside such order and judgment of dismissal and reinstate said cause; that said Stephen M. Chapman has recently instituted suit against relators in Butler county, in which he seeks to quiet title in him to the lands involved in the Potter suit aforesaid; that Francis J. Bullivant has refused to join relators herein, although requested so to do; that relators will be unable to present all the facts as to the title to this land, if called upon to defend the suit in Butler county last above stated, owing to the fact that many of the witnesses have since died, and the notes of their testimony in the Potter case have been lost or destroyed; that relators have used due diligence in attempting to enforce their rights (here following is a statement of the distant residence of relators, alleging some to be in Nova Scotia, others in Canada, and that two are minors); that they, the relators, have

no adequate remedy at law. This is followed by a prayer for our writ of mandamus.

Such are the facts recited in the alternative writ.

By way of return the respondent says: that he admits that he is judge of the circuit court of Mississippi county; admits making the order of dismissal; that he denies having any knowledge of the death of Potter, either individually or otherwise; that said order was made on the application of L. D. Grove, an attorney at law, who was attorney of record for Potter, who, at the time, represented he was attorney for Potter; that said order so made is not void, nor subject to collateral attack, nor to be set aside upon motion unless motion be made within three years. The return then proceeds in this language:

"Respondent further says that on heretofore the —— day of April, 1906, and at the regular April term of the circuit court of Mississippi county, Missouri, one Francis J. Bullivant, as an heir at law of the said James M. Potter, presented to the court his motion to set aside the order of dismissal made and entered in the cause wherein said James M. Potter was plaintiff, and Thomas Bullivant and others defendants; that upon the presentation of said motion it was stipulated and agreed by the parties thereto, that the said James M. Potter was dead at the time said judgment and order of dismissal was entered; that upon the hearing of said motion it was further shown to the court, by the introduction in evidence of certified copies of the land records of Butler county, Missouri, the situs of the lands in controversy in said suit, that the said James M. Potter, the plaintiff in said cause, had, by his general warranty deed dated January 3, 1896, and which said deed is duly recorded in Book No. 53 at page 141, the same being one of the land records of Butler county, Missouri, conveyed to Jane C. Potter one of the relators herein said lands. That it was further shown to the court

that the said Jane C. Potter had, by her quitclaim deed, dated the 19th day of April, 1901, and recorded in Book No. 49 at page 488, the same being one of the land records of Butler county, Missouri, conveyed all her right, title and interest in and to said lands to parties other than the relators herein or either of them.

"Respondent further says that upon the hearing of the motion of the relators to set aside the judgment and order of dismissal and reinstate the cause of James M. Potter versus Thomas Bullivant and others, it was not shown to the court that the relators or either of them had acquired any right, title or interest in the lands in controversy in said suit.

"Respondent further says that from the order and judgment of the court in overruling relators' said motion, the relators have an adequate remedy by appeal.

"All of which is respectfully submitted."

To this return, relators filed their plea, in substance as follows: They deny that L. D. Grove represented to respondent that he was attorney for James M. Potter, when the order of dismissal was made; they aver that it is mandatory upon respondent to reinstate and redocket the cause; they aver that section 795, referred to, but not specifically named in respondent's return, is not applicable to this case; they deny that upon the hearing of the motion of Francis J. Bullivant, any deeds or certified copies thereof were introduced showing that James M. Potter had conveyed to parties other than relators; they aver that the alleged deed from James M. Potter to Jane C. Potter, who is one of the relators herein, was notoriously fraudulent and void and was never in fact executed and that at the time it was claimed that it was executed, the said James M. Potter was *in extremis* and was in an unconscious and comatose condition, and because the said alleged instrument

does not describe the lands with such particularity as to convey the same. They further say that at the hearing of their motion on October 8, 1907, it was stipulated that James M. Potter died December 30, 1895, and that relators and Francis J. Bullivant were his heirs at law; relators further say that at the hearing of said motion it would have been shown by evidence that Potter died intestate, and that the deeds above mentioned were void, and the relators and Francis J. Bullivant were the heirs at law of Potter, but the respondent informed the attorneys of the relators at the time that the matters involved were well known to him, as he was judge in the former proceedings, and he did not care to go into them, and thereupon overruled relators' motion as aforesaid; relators further aver that at the time there was on file and of record a stipulation in said cause showing the death of Potter on December 30, 1895, and showing that relators and Francis J. Bullivant were his heirs at law, and that they have no adequate remedy by appeal. The pleading then concludes with a prayer for the remedies asked in the alternative writ.

To this pleading, respondent filed no replication.

This court appointed Hon. Arthur L. Oliver as a commissioner to take the testimony in the cause and report the same, together with his finding of facts, to this court. Such has been done and the findings so found by the commissioner are as follows:

"First. I find that the relators, Jane C. Potter, Dexter D. E. Potter, Mary C. Nasmith, Eliza Buchner, Edith Potter, a minor, and Robert Potter, a minor, together with one Francis J. Bullivant (who is not a party to this suit) and were at the time of filing of relators' petition for mandamus, the sole and surviving heirs, as children and grandchildren of one James M. Potter. That the said James M. Potter died intestate on or about the 30th day of December, 1895. That the respondent, Henry C. Riley, is

and was at all times mentioned in relator's petition the duly elected, qualified and acting judge of the circuit court of Mississippi county, Missouri.

"Second. I find that prior to the death of the said James M. Potter, during the month of September, 1890, he, the said James M. Potter, instituted a suit in equity, against one Thomas Bullivant, Stephen M. Chapman, Charles F. Hendricks, Byrd Duncan, Patrick Harmon, and Wm. F. Neal, defendants, in the circuit court of Butler county, wherein it was sought by the plaintiff Potter to have certain alleged encumbrances set aside, which had theretofore been given by him on his lands located in Butler county, Missouri, or to have the status of these encumbrances determined by the court. That this original suit was transferred by change of venue to the circuit court of Mississippi county, Missouri, where the cause of action was there dismissed as to all defendants except Thomas J. Bullivant and Stephen M. Chapman. That in October, 1892, the issues of this original suit were finally submitted to the respondent, H. C. Riley, as Judge of the Circuit Court of Mississippi County, aforesaid, and a judgment (which was not offered in the hearing before me) was by him rendered in favor of the plaintiff, James M. Potter. That thereupon one J. Perry Johnson was appointed as referee to ascertain and determine the value of certain improvements on the lands then in litigation, and that said referee thereafter filed his report, to which the defendants, Bullivant and Chapman, filed their exceptions.

"Third. I further find that thereafter, while the exceptions to the referee's report of defendants Bullivant and Chapman were pending in said circuit court of Mississippi county, and before they were ruled upon by the respondent, H. C. Riley, one L. D. Grove, who I find was acting as the attorney of James M. Potter in his lifetime, appeared as Potter's attorney,

on the 7th day of April, 1896, and had the following order made on record:

" 'James M. Potter, plaintiff, vs. Thomas Bullivant et al., defendants.

" 'From Butler county.

" 'Now comes the plaintiff, by attorney, and on motion this cause is dismissed.

" 'It is therefore considered and adjudged by the court that the defendants recover of and from the plaintiff the costs and charges herein expended and that execution issue therefor.'

"I find that at the time the above order was made, James M. Potter, the plaintiff, had then been dead about three months, but the evidence fails to show that any evidence of death was ever made known to the court, at or prior to that time, or that the court of its own knowledge knew of Potter's death. The evidence does show that on the same day in another and different suit wherein James M. Potter was defendant, his death was suggested and not denied, and one Jane Potter was made party defendant.

"Fourth. Your commissioner further finds that thereafter, to-wit, on the 8th day of October, 1907, the relators herein by their attorneys, filed a motion in the circuit court of Mississippi county, wherein they sought to have the court set aside the order of dismissal made in the case of James M. Potter vs. Thomas J. Bullivant et al., on the 7th day of April, 1896, and that said motion was by the respondent, H. C. Riley, overruled. That at the time of the submission of this motion, on October 8, 1907, it was stipulated and admitted by the parties in said motion, and offered before the respondent H. C. Riley, in support of said motion, the following:

" 'First: That James M. Potter, the plaintiff in the above entitled suit, died on or about the 30th day of December, 1895, and before the order of dismissal was made in said suit.

" 'Second: That Eliza Buchner, Mary G. Na-smith, Jane C. Potter, Dexter D. E. Potter, Edith Potter, and Robert Potter, together with Francis J. Bullivant, are interested as heirs at law of James M. Potter, deceased, who was formerly the plaintiff in the above styled suit.'

"I further find that at the time of the submission of relators' motion in October, 1907, there was no evidence introduced on the hearing of said motion in the circuit court of Mississippi county, Missouri, and before the respondent, showing that James M. Potter had prior to his death conveyed the lands in controversy. But that on another and different motion filed by one Francis J. Bullivant (who is not a party to this suit) on April, 1905, and passed upon by the respondent on the 5th day of October, 1906, defendants in that motion offered at sometime in vacation certain exhibits to the respondent, in support of their contention that said James M. Potter had conveyed said lands in controversy."

Such are the facts pleaded and the facts proven in this record.

I. In respondent's brief we are cited to section 795, Revised Statutes 1899, as being of force and vitality in this cause. This section permits the setting aside of judgments for irregularities upon motions filed within three years after the terms of their rendition. This motion was filed long after the expiration of the time prescribed by this statute, and as we take it was not intended to be a motion under this section of the statute. A motion contemplated by this statute must be one based upon an irregularity which is patent on the record, and not one depending upon proof *dehors* the record. [Phillips v. Evans, 64 Mo. l. c. 22; Latshaw v. McNees, 50 Mo. l. c. 384; Powell v. Gott, 13 Mo. l. c. 461.]

The motion in question is more in the nature of a writ of error *coram nobis,* the very purpose of which

is to make apparent to the court by evidence *dehors* the record some error of fact which did not appear of record and which was unknown to the court. In fact, if the death does not appear of record but must be shown by evidence *aliunde,* the writ of error *coram nobis* is the remedy. In this State a motion to vacate the judgment charging the fact of death and supported by proof takes the place of the common law writ of error *coram nobis.* The general rule as to the remedy is thus stated in 11 Ency. Plead. and Prac., 847: "If, however, the fact of death must be shown *dehors* the record the remedy is the writ of error *coram nobis."* [Powell v. Gott, 13 Mo. l. c. 461; 5 Ency. Plead. and Prac., 26-27; Dugan v. Scott, 37 Mo. App. l. c. 669; Craig v. Smith, 65 Mo. 536.]

In the case of Craig v. Smith, *supra,* there was both a patent error of record, *i. e.,* the sheriff's return, which showed a *non est* as to the moving defendant, and an error of fact, in this, that the attorneys representing two of the defendants (there being three including the movant) had filed an answer for defendants without specifying for which defendants the answer was intended, when they had no authority to appear for but two and not for the party filing the motion to vacate the judgment. The motion was filed within three years, and this court treated it both as a motion in the nature of a writ of error *coram nobis* and as a motion under the statute, now section 795, Revised Statutes 1899.

In 5 Ency. Plead. and Prac., 26-27, the office of the writ is thus described and defined: "The office of the writ of *coram nobis* is to bring the attention of the court to, and obtain relief from, errors of fact, such as the death of either party pending the suit and before judgment therein; or infancy, where the party was not properly represented by guardian, or coverture, where the common law disability still exists, or insanity, it seems, at the time of the trial; or a valid

defense existing in the facts of the case, but which, without negligence on the part of the defendant, was not made, either through duress or fraud or excusable mistake; these facts not appearing on the face of the record, and being such as, if known in season, would have prevented the rendition and entry of the judgment questioned.''

In Powell v. Gott, supra, we said: "This was a motion to set aside a judgment obtained against an infant who appeared by attorney. The judgment was rendered in 1841, and the motion was made in 1847, about two years after the defendant attained his majority. The motion was supported by several affidavits, both of the petitioner and others of his family, to establish the truth of the facts stated therein. The motion was overruled by the circuit court. This is in the nature of a writ of error *coram nobis*. The object of this motion is to correct an error in fact, upon which certain proceedings in law have been based.''

And in this State it has been held that no Statute of Limitations applies to such proceeding. [Powell v. Gott, 13 Mo. 458; Latshaw v. McNees, 50 Mo. l. c. 384.]

In the latter case it is said: "As this error does not appear upon the face of the pleadings, it can only be brought to the attention of the court by a proceeding in the nature of a writ of error *coram nobis*. The usual way is by motion supported by affidavits or evidence. If the motion is sustained the husband and wife are allowed to make any defense to the merits they may have, and the case is retried. This motion is allowed at any subsequent term after final judgment. I know of no Statute of Limitations against such a motion. The Statute of Limitations in regard to irregularities applies to such as appear on the face of the proceedings, and not to such as are brought before court by evidence *aliunde,* as in this

case. [See Powell v. Gott, 13 Mo. 458; Ex parte Toney, 11 Mo. 661; Groner v. Smith, 49 Mo. 318; Ex parte Page, Id. 291.]''

The relators herein are proper parties to file such a motion in the original case. They are the heirs at law of Potter and are injured by the judgment. They are privies to the record as such heirs of Potter. In 5 Ency. Plead. and Prac., 31, this rule is announced: ''A writ of error *coram nobis* can only be procured by one who is a party, or privy to the record, or injured thereby.''

See also Holford v. Alexander, Assignee, 12 Ala. l. c. 289, wherein, on a discussion of who can sue out such a writ, it was said: ''It is laid down in the elementary books that a writ of error can be brought by him only who was a party or privy to the record, or injured by the judgment, and who consequently will derive advantage from its reversal. Heirs, executors, administrators, reversioners, remaindermen, terre tenants, or a husband who marries after a judgment against his wife, and perhaps others, who are not parties to the proceeding sought to be revised, may join in the prosecution of a writ of error.'' Numerous cases are cited by the court in support of this point.

II. Respondent contends, among other things, that the judgment of dismissal was voidable only and not void, and being only voidable it cannot be attacked in this, a collateral proceeding, as he terms the case in hand.

That the death of Potter terminated the relationship of Grove and Potter as attorney and client cannot be questioned. [Weeks on Attorneys at Law, secs. 248 and 256.] That the judgment of dismissal was on the motion of Grove is a fact found and undisputed.

But the immediate question before us is, does the death of a party to a suit, after being duly under

the jurisdiction of the court, both as to person and subject-matter, make an adverse ruling to him void, or does it render such judgment only voidable? The cases are not uniform upon the question, but the weight of authority is to the effect that such a judgment is voidable only. In Black on Judgments, sec. 200, it is said: "The great preponderance of authority is to the effect that, where the court has acquired jurisdiction of the subject-matter and the persons during the lifetime of a party, a judgment rendered against him after his death is, although erroneous and liable to be set aside, not void nor open to collateral attack."

The author has collated a number of authorities, and among them the old case of Coleman v. McAnulty, 16 Mo. 173. In this case, our court, speaking through Scott, J., said: "In the case of Warder v. Tainter, 4 Watts 278, the court says the authorities are abundant to show that in no case is a judgment rendered by a court of general jurisdiction considered void on account of the death of the defendant having taken place before the rendition of it; that, at most, it is only voidable. If the death of the defendant will not render a judgment void, no reason is perceived why the death of the plaintiff should have that effect. There being, then, a valid sale under a writ, supported by a judgment not void, the title of Coleman passed by it."

Vanfleet, in his work on Collateral Attack on Judicial Proceedings, sec. 602, undertakes to give the reason for the rule thus: "Jurisdiction over the parties being shown by the record, any movement for or against them is an implied finding that they are in life and legally competent to protect their rights. The recital usually is that the parties, either in person or by attorney, are present, or neglect, after due notice, to be present. Those are matters to be determined from the evidence; and the determination is not

void because the evidence was false or insufficient.''

The case of Coleman v. McAnulty, supra, has been cited and approved upon this question in the following cases: Fithian v. Monks, 43 Mo. l. c. 521; Bank v. McWharters, 52 Mo. l. c. 35; Lewis v. Coombs, 60 Mo. l. c. 48; Posthlewaite v. Ghiselin, 97 Mo. l. c. 425.

Our cases are not wholly uniform on the subject. In Sargeant v. Rowsey, 89 Mo. 617, SHERWOOD, J., holds that where a defendant in an action to foreclose a mortgage dies during the pendency of the suit and a decree is entered without suggestion of death and the bringing in of the heirs, a sale under such decree carried no title and is a nullity.

The Missouri cases seem to agree that if at the institution of the suit the defendant was in fact dead, then the judgment was a nullity. But on the other hand the Sargeant case, supra, seems to stand alone, in the list of cases wherein the court had acquired jurisdiction of the person and the subject-matter prior to the death. It is true that in the case of Hinkle v. Kerr, 148 Mo. 43, BRACE, P. J., touches the questions, and the distinction between the two classes of cases, i. e., those cases wherein the party was dead at the institution of the suit, and those cases wherein the party was alive and duly served with process at the institution of the suit, but dies pending the action and before final judgment, somewhat tenderly and suspiciously and in a degree doubtingly, yet the case finally passed off on the question that the party was a woman under coverture.

However, GANTT, P. J., in the case of Shea v. Shea, 154 Mo. l. c. 606, gets back to the old mooring of the McAnulty case, supra, and summarizes the Missouri doctrine thus: ''It is well settled in this State, whatever may be the judicial opinion in other jurisdictions, that an action begun and prosecuted against a defendant who was dead when it was begun is absolutely void and can be attacked collaterally as

well as directly. [Bollinger v. Chouteau, 20 Mo. 89; Williams v. Hudson, 93 Mo. 524; Crosley v. Hutton, 98 Mo. 196; Graves v. Ewart, 99 Mo. 13; Jaicks v. Sullivan, 128 Mo. 177.] But the great weight of authority in this country is that where a court has acquired jurisdiction of the subject-matter and of the person, the death of the defendant before the judgment is rendered, will not render the judgment void for that reason. [Yaple v. Titus, 41 Pa. St. 195; Warder v. Tainter, 4 Watts 279; Collins v. Mitchell, 5 Fla. 364; Freeman on Judgments (4 Ed.), sec. 140.]''

So, too, says BLACK, J., in Williams v. Hudson, 93 Mo. 1. c. 528: ''As the representatives of Bougher and Crapster were not made defendants in the tax suit, and as Bougher and Crapster were dead when that suit was commenced, the judgment, as to them and their representatives, is void. Had they died after suit commenced and service of process upon them, another question would be presented; but a suit commenced and prosecuted against a dead man gives the court no authority to enter judgment against him; the judgment is void as to him.''

The learned annotator of L. R. A., in vol. 49, 1. c. 160, in commenting on the case of Kager v. Vickery (Kansas case), which holds the judgment void: says: ''The majority of cases hold that a judgment taken against a party who dies after suit, but before judgment, is not void. These cases generally hold that such judgments cannot be attacked collaterally; that they are erroneous and voidable, and that they are open to an attack in the proper manner, by motion or by writ of error *coram nobis,* etc.'' To like effect is Freeman on Judgments. [1 Freeman on Judgments, sec. 153.]

From all we conclude the right rule to be, that if the party dies during the pendency of a suit wherein the court by legal process has acquired jurisdiction over both the person and the subject-matter, but be-

fore judgment, and a judgment is rendered against such party so dying, without there being anything of record showing such death, then such judgment is voidable only and not void. But on the other hand if the party was dead at the institution of the suit, and the court for that reason acquired no jurisdiction over the person or subject-matter, then such a judgment is void.

And in the case at bar we hold that if the vitality of this judgment of dismissal is dependent solely upon the one question of the death of Potter pending the suit, such judgment cannot be attacked or impugned in this, a collateral proceeding.

III. Relators say that they do not depend entirely upon the question that the judgment is void because Potter was dead at the rendition thereof. They in addition urge that the cause was under submission, and say that the dismissal was without authority of law and therefore void upon the face of the record itself. In other words that under the record disclosures and the law such act was nugatory and void. In this contention relators plant themselves behind Revised Statutes 1899, section 639, which reads: "The plaintiff shall be allowed to dismiss his suit or take a nonsuit at any time before the same is finally submitted to the jury, or to the court sitting as a jury, or to the court, and not afterwards."

A reference to the facts found by our commissioner shows that in the original suit of Potter v. Bullivant et al., the cause was submitted to the court who found in favor of Potter, that is to say, that the deeds in question were mortgages and not in fact deeds. Our commissioner further finds that a referee was appointed "to ascertain and determine the value of certain improvements on the lands then in litigation, and that said referee thereafter filed his report, to which the defendants, Bullivant and Chapman, filed

their exceptions.'' Our commissioner then continued:
''I further find that thereafter, while the exceptions
to the referee's report of defendants Bullivant and
Chapman were pending in said court of Mississippi
county, and before they were ruled upon by the re-
spondent, H. C. Riley, one L. D. Grove, who I find was
acting as the attorney of James M. Potter in his life-
time, appeared as Potter's attorney on the 7th day of
April, 1896, and had the following order made in rec-
ord'' (then follows in full terms the order and judg-
ment of dismissal and a judgment against Potter for
costs.) The record before us does not disclose the
fact as to whether or not these exceptions had been
heard and submitted to the respondent for his decis-
ion. The only thing appearing is that such exceptions
were filed, and they might have been withdrawn before
being heard and determined by the court. The par-
ties were entitled to be heard upon their exceptions
and when heard they would be submitted to the court
for a decision therein. The record fails to show such
hearing and as a consequence the exceptions within
themselves were not under submission, within the terms
of the statute, supra.

But going back to the further findings of our com-
missioner, we see that there is a finding to the effect
that in 1890 James M. Potter instituted a suit in
equity against Bullivant and Chapman and others in
the circuit court of Butler county, wherein it was
sought by plaintiff to have certain alleged encum-
brances set aside, or to have the status of the same
determined by the court; that by change of venue said
cause went to Mississippi county where a dismissal
was taken as to all defendants except Bullivant and
Chapman. Then our commissioner in words finds and
says: ''That in October, 1892, the issues of this origi-
nal suit were finally submitted to the respondent, H.
C. Riley, . . . and a judgment was by him rend-

219 Sup.—44

ered in favor of the plaintiff, James M. Potter. That thereupon one J. Perry Johnson was appointed as a referee to ascertain and determine the value of certain improvements on the lands in litigation, and that the said referee thereafter filed his report, to which the defendants, Bullivant and Chapman, filed their exceptions.''

If from this record of found facts there was either a final judgment in this case, or the whole case was before the court under submission, then, either of said conditions would be fatal to the contention of respondent. First, if there was a final judgment, then the order of dismissal should not have been entered and being entered at a later term was *coram non judice*. [Mohler v. Wiltberger, 74 Ill. 163; Long v. Thwing, 9 Ind. 179; Danforth v. Lowe, 53 Mo. 217.]

And, secondly, if the whole case was under submission and no final judgment, then the order of dismissal was in the face of an express statute, section 639, supra, and void on the face of the record.

(a). Was the judgment entered a final judgment? In determining this question in addition to the facts found we must take into consideration the undenied allegations of the alternative writ. Such undenied allegations stand as admitted. [13 Ency. Plead. and Prac., 734.] The above authority says: ''All matters well pleaded by the relator which are not denied by the respondent in express terms are admitted to be true. Insufficient answers have the same effect.''

Speaking of the original suit of Potter v. Bullivant et al., the alternative writ says: ''And on the twelfth day of October, 1892, the cause was finally submitted to the court upon the pleadings and evidence, for its determination of the issues thereby joined, and the court thereupon made and entered of record a decree determining that the said James M. Potter was the owner of the said real estate, that certain deeds given by said James M. Potter to said Thomas

Bullivant were in fact mortgages, and by consent of all parties to the cause appointed a referee, one J. Perry Johnson, to determine the value of certain improvements on said lands erected by said Thomas Bullivant, and to take an accounting to ascertain the state of accounts between the parties in reference to the subject-matters of said suit."

This allegation stands undenied by the return and is therefore admitted. This coupled with the facts found fully show the character of the judgment. Was it a final judgment? We are of opinion that the decree or judgment in the Potter case was not a final judgment. Whilst it settled the principal equities, it left other matters to be passed under review by the court, before the full equities could be adjudicated. The decree pleaded determined that the deeds were mortgages, but the petition or bill in equity not only prayed for that relief, but, as averred in the alternative writ, it further asked the chancellor to determine their respective interests in and to the said real estate. A part of this controversy was determined by the chancellor, but another part was referred to a referee. Before final decree the report of the referee must necessarily pass under the judicial review of the chancellor. The amount of the mortgagee's interest in the lands could not be decreed until this report was made to and passed upon by the court.

In Black on Judgments, sec. 41, it is said: "The difficulty appears to arise in relation to those decrees which, while settling the general equities of the cause, leave something for future action or determination. And the true rule seems to be that, if that which remains to be done or decided will require the action or consideration of the court before the rights involved in the cause can be fully and finally disposed of, the decree is interlocutory; but it is none the less final if, after settling the equities, it leaves a necessity for

some further action or direction of the court in execution of the decree as it stands.''

And in section 44 the same author says: ''The most difficult cases in which to draw the line between final and interlocutory decrees, are those in which the decree, after finding the general equities, orders reference to a master for some specific purpose. Yet there are not wanting principles upon which to base a reasonable and accurate distinction in these cases. As the condensed result of the numerous authorities on the subject, we may formulate the following specific rules: First, where a decree is made disposing of the general equities of the case, but ordering a reference to a master to ascertain damages, or to find certain facts, or to do anything else necessary to be done before a final adjustment of the rights of the parties can be had, if the functions of the master are to be judicial, and not merely ministerial, and the provisions depending on his report are not already incorporated in the decree, then the decree is interlocutory and not final. Second, where a decree ascertains and fixes all the rights of the parties, but a reference is ordered to a master to do or ascertain something that is necessary to carry the decree into effect, if the functions of the master are to be merely ministerial and not judicial, or if all the consequential directions depending on the result of the proceedings before him are given in the decree itself, then the decree is final and not interlocutory. To take a single illustration,—the reference of a case to a master, to take an account upon evidence, and for the examination of the parties, and to make or refuse allowances affecting the rights of the parties, and to report his results to the court, is not a final decree. For his report is subject to exceptions from either side, which must be brought to the notice of the court before it can be available. It can only be made so by the court's overruling the excep-

tions, or by an order confirming the report, with a
final decree for its appropriation and payment.''

The decree for our review, whilst not before us
*in haec verba,* evidently provided for the referee to
take evidence upon two questions, i. e.  (1) the value
of improvements placed on the lands by defendants,
and (2) the amount of the mortgage debt.  And fur-
ther that such referee report to the court.  In such
case there could be no final decree until the report of
the referee and the exceptions thereto were passed
upon by the court.

Again, discussing final and interlocutory decrees,
23 Cyc. 786, says: ''Although there cannot be two
final judgments in the same case, it is sometimes proper
to enter an interlocutory judgment before the final
disposition of the case.  Generally speaking the judg-
ment is final if it at once disposes of the entire contro-
versy settling the rights of the parties, and leaving
nothing for further consideration; but interlocutory
if it merely settles some preliminary point or matter,
or reserves for future determination some detail es-
sential to the complete adjustment of the subject of
litigation.  The judgment is ordinarily final when ren-
dered in pursuance of a general verdict, or on submis-
sion of the entire case to the court, or on a submission
for decision on the pleadings.  But an interlocutory
judgment may be entered where it is necessary to
frame an issue on which the parties may properly go
to trial, or on overruling a demurrer, where leave is
given to amend the pleading or to plead over, or
where the court has not before it all the papers neces-
sary to settle the form of the final judgment, or re-
serves the decision of some point affecting the amount
recoverable or the right to modify the judgment, or
finds it necessary to appoint a master or referee to
find issues in the case, unless where the action to be
taken on the coming in of his report is definitely pre-
scribed.  So also a judgment is generally interlocutory

if it embodies a condition, the performance of which is necessary to make it effective, or a condition on the performance of which it may be released. And in the action of account, it is usual and proper to render a preliminary judgment that 'the parties do account.' "

In the case at bar it was necessary to appoint a master or referee to find issues in the case, and the action to be taken on the coming in of his report was not definitely prescribed by the decree under which he was appointed.

We take it that there was left a very material portion of this case to be passed upon by the court upon the coming in of the report of the referee. The judgment mentioned in the alternative writ is not a final judgment as we read and understand the cases, so that the contention of relators that no order of dismissal could be made because of a final judgment is untenable.

(b). If the judgment was not final, as we have found, then was the case under submission, so as to make section 639 applicable? We think not under the record before us. There is nothing to show that there had been any hearing upon the report and exceptions taken thereto. Had the record disclosed that there had been a hearing upon these exceptions and this report, and the chancellor *nisi* had taken the same as submitted to him for judgment thereon, a different case would be presented. By section 714, Revised Statutes 1899, the parties were entitled to argue their exceptions to the report of the referee. The law says: "and shall be argued without delay," thus showing that a hearing is contemplated before a submission. Under the facts before us this cause had not been finally submitted to the court so as to bring it within the purview of section 639, supra.

IV. By our first paragraph we reach the conclusion that the motion filed by relators in the original

suit of Potter v. Bullivant et al., was in the nature of a writ of error *coram nobis,* and that the relators were such privies to the record that they had a right to come in and file the same. By our second paragraph we reach the conclusion that the judgment of dismissal is not a void judgment, but voidable only, and inasmuch as the motion to vacate was overruled it stands there as bar to further action, and cannot be questioned in a collateral proceeding. By our third paragraph we hold that the first judgment in the original case is not a final judgment, so as to preclude a dismissal of the cause, and further that the cause was not under submission so as to preclude a dismissal under the terms of section 639, supra.

From this it follows that the peremptory writ should be refused for two reasons, (1) because the relators had the right to file the motion to vacate, and after receiving an adverse judgment thereon had the right to appeal, and, (2) because the judgment of dismissal is only voidable, and cannot be attacked in this proceeding. We cannot compel the court to proceed with the cause so long as this voidable judgment remains in force. Nor can we say that if relators had the right to file the motion to vacate the judgment, as we conclude they did have, they then did not have ample redress by way of appeal from the order or judgment overruling their motion.

In this State a motion to vacate a judgment for error of fact, and not for patent error of record, supported by evidence *dehors* the record, takes the place of the common law writ of error *coram nobis,* and is in the nature of an independent and direct attack upon the judgment in the court committing the error. A judgment upon such a motion is within itself a final judgment from which an appeal will lie.

But even if there was a question as to this, of which we think there is none, yet the judgment of dismissal and for costs in the original proceeding was a

final judgment, and the order overruling the motion to vacate such judgment was at least a "special order after final judgment in the cause" so as to permit an appeal under Revised Statutes 1899, section 806.

The peremptory writ should be denied, and it is so ordered.

All concur.